ROSA ALPERIN, Respondent, *v.* BERNARD EARLE, Appellant.

*Injury to a tenant from defects in a roof used for drying clothes — liability of the landlord.*

In an action to recover damages sustained by a tenant, who was injured while engaged in hanging clothes upon a line stretched across the roof of the house for drying purposes, it appeared that there was no yard to the house, and that slats had been placed upon the roof for the common use of the tenants in drying their clothes, and that the injury was caused by the breaking of one of these slats.

*Held,* that to render the landlord liable for injuries to his tenants resulting from the dangerous condition of those parts of the building reserved for the common use of the tenants, and over which he retains control, it must appear, either that he has been guilty of actual negligence in regard thereto, or that with notice of, or an unreasonable omission on his part to ascertain such condition, he fails to make the necessary repairs.

Appeal by the defendant from a judgment, entered upon a verdict for $500, rendered on a trial at the New York Circuit before the court and a jury, in the office of the clerk of the county of New York on the 28th day of January, 1889; and also from an order, entered in said clerk's office January 24, 1889, denying a motion for a new trial made upon the minutes of the court.

*Townsend & Mahan,* for the appellant.

*Moses Esberg,* for the respondent.

Barrett, J.:

The defendant is the owner of a tenement-house in this city; the plaintiff is the wife of one of his tenants. She was injured while engaged in hanging clothes upon a line stretched across the roof of

the house for drying purposes. At the time of the accident she was standing upon some wooden slats which had been placed over the tin roof for the accommodation of the tenants. One of these slats broke under her weight and her foot went through and was injured. There was no yard to the house, and this slatting was a substitute provided by the landlord for the common use of the tenants in drying their clothes.

The rules applicable to public halls and stairways in such buildings govern here. The landlord is responsible for injuries to his tenants resulting from the dangerous condition of those parts of the building which he reserves for the common use and over which he retains control, but only when he has been guilty of actual negligence with regard thereto. To bring him within this rule " it must appear," as was said in *Henkel* v. *Murr* (31 Hun, 30), " that with some notice of the condition of things, or under some circumstances equivalent to notice, such as an unreasonable omission to ascertain the condition, he had failed to make the necessary repairs or changes called for by the condition or exigency." This is the fair rule. That contended for by the appellant, namely, that the landlord is only responsible for some willful act or for fraud, or for creating a nuisance, is too narrow and is only applicable to a demise of the entire building, as in *Jaffe* v. *Harteau* (56 N. Y., 398); and *Edwards* v. *New York and Harlem Railroad Company* (98 id., 245).

There was evidence tending to show that the defendant's agent, Hennessy, knew that the slat in question was rotten and that he neglected to have a new one put in. The appellant's criticism upon this testimony was for the jury. It was sufficient, if believed, to save the case and sustain the verdict. The charge upon which the jury retired was correct, and but for an unfortunate incident which subsequently occurred, we would have had no difficulty in affirming this judgment. The incident to which we refer is disclosed in the printed case in these words:

The jury then retired, and after being out some time, sent the following written question to the court:

" Will the court please advise, viz., should Mr. Earle or his agent Hennessy, or the plaintiff, neither be aware of any defect in the slat-work and the accident occur, would the defendant be liable ? "

The court sent for the jury, and after they returned to the court room, in the presence of counsel for both sides, instructed them further as follows :

THE COURT.— The jury submits this question : " Will the court please advise, viz., should Mr. Earle or his agent Hennessy, or the plaintiffs, neither be aware of any defect in the slat-work and the accident occur, would the defendant be liable ? " The answer to this is that the landlord might be liable even though neither of them knew about this defect." To this the defendant excepted. The learned judge said a good deal more upon the same subject, at the same time emphasizing and illustrating this instruction.

For instance, he told the jury that the landlord had " some kind of a duty towards that roof, and that duty, so far as it can be stated, is, in law, to exercise the reasonable care which a prudent man does about his roof ; * * * that the case shall be left to the sound judgment of twelve men to say whether they think the landlord, under all the circumstances of the case, has exercised the reasonable care that a prudent man does about a roof which he lets out. It may occur that the landlord did not know it, or his agent did not know it, *and that they did not know it because they did not look, and if they had looked they might have discovered it.* * * * It is for the jury to say, under all the circumstances, whose business it was *to find out that the slat was not in sound condition.* * * * Whether this was one of those inscrutable accidents that happen or whether some one or other was to blame *for not seeing that that slat was in an unsound condition.*" And more to the same effect. This, we think, was error, as applied to the facts of this case. There was really nothing here upon which to hold the defendant except the actual notice which we have already adverted to.

There was no evidence tending to show " an unreasonable omission to ascertain the condition " of the slat, none that the landlord had " reason to suspect " that the roof was unsafe. The uncontradicted testimony, indeed, the testimony furnished by the plaintiff herself, showed that there was no indication of rottenness upon the upper or exposed surface of the slat. The rottenness embraced but about one-half of the surface underneath, a circumstance which gives plausibility to the defendant's criticism of the testimony which attributes to the agent Hennessy, an admission of knowledge of the defect.

It also appeared, without dispute, that this agent frequently examined the roof and had it repaired from time to time, the last occasion being about eighteen months prior to the accident. There was, therefore, nothing to go to the jury upon the theory of negligence in not examining the slat. The defect was not visible nor could it have been discovered by any ordinary examination. There was no reason to suspect decay; and although the structure was an old one, the defendant did his fair duty in having it frequently examined by his agent and repaired whenever a defect was observed.

As the verdict plainly resulted from the learned judge's answer to what seems to have been, to the jury, a crucial question, we feel constrained to grant the defendant a new trial.

The judgment and order appealed from should, therefore, be reversed, and a new trial granted, with costs to abide the event.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment and order reversed, and a new trial granted. with costs to abide the event.