MARY TIMLIN, as Administratrix, etc., Respondent, *v.* THE STANDARD OIL COMPANY et al., Appellants.

Where the owner of premises knows, or, by the exercise of reasonable care, can ascertain that they have upon them a nuisance, dangerous to the public or an adjoining owner, it is his duty to abate it before leasing the property; if he leases without doing this, he is liable to respond in damages to anyone injured in consequence of the nuisance; and this is so, although he did not create the nuisance.

The same liability rests upon a tenant who sublets the premises knowing or being chargeable with knowledge of the existence of the nuisance. *Edwards* v. *N. Y. & H. R. R. Co.* (98 N. Y. 245), distinguished.

Responsibility for such a nuisance is not imposed upon the tenant simply by his acceptance of a lease, and to establish a liability on his part, it must be shown that he had notice of the existence of the nuisance, or that time enough had elapsed in which he could have obtained knowledge thereof by the exercise of proper care.

As to whether the rule holding a tenant liable, applies in case of one who leases and has possession of but part of a structure, and where the nuisance consists in the dangerous condition of a main wall of the structure, *quære*.

*Timlin* v. *S. O. Co.* (54 Hun, 44), reversed as to the individual defendants.

(Argued April 28, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made September 10, 1889, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Matthew Hale* for appellant companies. The motion of the defendant, the Acme Oil Company, for a nonsuit should have

been granted, and a verdict on behalf of this defendant should have been directed. (*Ahern* v. *Steele*, 115 N. Y. 204.) The motions for a nonsuit should have been granted as to both the oil companies defendants. (*People* v. *Townsend*, 3 Hill, 479 ; Wood on Nuisance, §§ 73, 838 ; *McDonough* v. *Gilman*, 3 Allen, 264 ; *Wenzlick* v. *McCotter*, 87 N. Y. 122 ; *Clancy* v. *Byrne*, 56 id. 129 ; *Edwards* v. *N. Y. & H. R. R. Co.*, 98 id. 245 ; *Wolf* v. *Kilpatrick*, 101 id. 146 ; *Nelson* v. *L. B. Co.*, L. R. [2 C. P. Div.] 311 ; *Odell* v. *Solomon*, 99 N. Y. 635 ; *House* v. *Metcalf*, 27 Conn. 631 ; *Rosewell* v. *Prior*, 2 Cro. 372 ; *Chauntler* v. *Robinson*, 4 Exch. 163 ; *Cheetham* v. *Hampton*, 4 T. R. 318 ; *Russell* v. *Shelton*, L. R. [3 Q. B.] 449.) Plaintiff cannot recover upon a ground not stated in his complaint. (*Romeyn* v. *Sickles*, 108 N. Y. 650 ; *Day* v. *New Lots*, 107 id. 148 ; *W. M. & R. Co.* v. *Thayer*, 50 Hun, 516.) Defendant was entitled to a charge that if the appearance of the wall was such that one not an expert could tell by looking at it that it was in a dangerous condition and liable to fall, it was negligence on his part to expose himself to such danger. (1 S. & R. on Neg. § 92.)

*Louis Marshall* and *Nathaniel C. Moak* for Murphey & Liscomb, appellants. The oil companies were the owners of the premises, the companies had leased to Murphey & Liscomb and the latter were the tenants of the former. (*Clancy* v. *Byrne*, 56 N. Y. 132, 134.) The rights and liabilities of land-lord and tenant are to be determined as of the date of the last letting, except possibly as to existing knowledge upon the facts existing at the last letting. (*Sandford* v. *Clarke*, L. R. [21 Q. B. Div.] 308, 400 ; *Whalen* v. *Gloucester*, 6 T. & C. 135, 137 ; *Tompkins* v. *Lawrence*, 8 C. & P. 729 ; *Grandy* v. *Juber*, 5 B. & S. 78, 88, 91 ; *Griffith* v. *Lewis*, 17 Mo. App. 613 ; *Swords* v. *Edgar*, 1 T. & C. 23 ; 59 N. Y. 34–36.) The owner of a building adjoining a street or highway is under a legal obligation to take legal care that it is kept in proper condition so that it shall not fall into the street or highway and injure persons lawfully there. (*Muller* v. *St. John*, 57 N. Y. 567,

569; *Sword's* v. *Edgar*, 59 id. 34.)    Murphey & Liscomb
are not liable unless they were guilty of actual negligence.
Mere constructive negligence is not sufficient to render them
liable.    (*Odell* v. *Solomon*, 99 N. Y. 635, 636, 637; *Woram*
v. *Noble*, 41 Hun, 398; *Wolf* v. *Kilpatrick*, 101 N. Y. 146,
151, 152; *Ahern* v. *Steele*, 115 id. 203.)    Negligence is the
failure to do what a person of ordinary prudence would have
done under the circumstances of the situation, or doing what
such a person, under such circumstances, would not have done.
(*R. R. Co.* v. *Jones*, 95 U. S. 441; *Mark* v. *H. R. B. Co.*,
103 N. Y. 35; Whart. on Neg. § 3; *Heaven* v. *Pender*, L.
R. [11 Q. B. Div.] 507.)    A tenant from year to year is not
bound to substantial repairs; he is only bound to keep the
premises wind and water tight.    (*Leach* v. *Thomas*, 7 C. & P.
327; 1 Taylor on Landl. & Ten. [8th ed.] §§ 343, 363; *Hors-
fall* v. *Mather*, Holt's N. P. 9; *Johnson* v. *Dixon*, 1 Daly,
178; *Deutsch* v. *Abeles*, 15 Mo. App. 404; Wood on Landl. &
Ten. §§ 368, 371; *Griffith* v. *Lewis*, 17 Mo. App. 605; *San-
ford* v. *Clarke*, L. R. [21 Q. B.] 398; *Anworth* v. *Johnson*,
5 C. & P. 239; *Suydam* v. *Jackson*, 54 N. Y. 454; *Gutte-
ridge* v. *Munyard*, 7 C. & P. 129.)    As Murphey & Liscomb
only occupied a part of the entire building, and their occupa-
tion had nothing to do with causing the injury, they are not
liable, though the landlord would be.    (*Donohue* v. *Kendall*,
18 J. & S. 386, 388, 389; *Looney* v. *McLean*, 129 Mass. 33;
*Burt* v. *Boston*, 122 id. 226, 227; *Larue* v. *Farren*, 116 id.
67, 68, 69; *Shipley* v. *Associates*, 106 id. 194, 200; 101 id.
254; *Kirby* v. *Boylston*, 14 Gray, 251; *Milford* v. *Holbrook*,
9 Allen, 17, 22; S. & R. on Neg. § 512; Smith on Neg. 46,
47; *Lawrence* v. *Burrell*, 3 How. Pr. [N. S.] 126; *West Side*
v. *Newton*, 57 How. Pr. 152, 154, 155, 156; 76 N. Y. 616;
*Bradley* v. *De Gorcouria*, 14 Abb. [N. C.] 53, 54; *Jennings*
v. *Van Schaick*, 108 N. Y. 530, 532–534; *Eagle* v. *Swayze*,
2 Daly, 141.)    Defendants Murphey & Liscomb were not liable
for causing the death of Timlin.    (Code Civ. Pro. § 1902;
*Crandell* v. *Eldridge*, 46 Hun, 411; Patterson on Railway
Accidents, § 2.)

*E. Countryman* for respondent. The court was right in refusing a nonsuit, and properly submitted the question to the jury whether the wall was a nuisance, and the evidence abundantly warranted the affirmative answer given by the verdict. (Wood on Nuisance [2d ed.], § 109 ; Cooley on Torts, 607 ; *Chountler* v. *Robinson,* 4 Ex. 163, 169 ; *Regina* v. *Watts,* 1 Salk. 357 ; *Todd* v. *Flight,* 9 C. B. [N. S.] 377, 378 ; *Grove Case,* 45 Ind. 429 ; *Drake Case,* 13 Metc. 292 ; *Day Case,* 5 Allen, 98 ; *Parker Case,* 39 Ga. 725 ; *Meyer* v. *Metzler,* 51 Cal. 142 ; *Buckart Case,* 3 Hill, 193 ; *Mullen* v. *St. John,* 57 N. Y. 567, 569 ; *People* v. *Erwin,* 4 Den. 129 ; *Jennings* v. *Van Schaick,* 13 Daly, 438 ; 108 N. Y. 530 ; *Rogers* v. *Stewart,* 5 Vt. 215, 216 ; *Irwin* v. *Wood,* 4 Robt. 138, 139 ; 51 N. Y. 224, 230 ; *Benson* v. *Luorez,* 28 How. Pr. 511 ; *Gray* v. *B. G. Co.,* 114 Mass. 149 ; *Sessengut* v. *Posey,* 67 Ind. 408 ; *Irvin* v. *Fowler,* 5 Robt. 483 ; *Joyce* v. *Martin,* 15 R. I. 558 ; *McCallum* v. *Hutchinson,* 7 Up. Can. [C. P.] 508 ; *Simmons* v. *Everson,* 36 N. Y. S. R. 265 ; Moak's Underhill on Torts, 255 ; *Congreve* v. *Smith,* 18 N. Y. 79, 82 ; *Congreve* v. *Morgan,* 18 id. 84, 85 ; *Clifford* v. *Dam,* 81 id. 52, 53 ; *Morris Case,* 89 id. 498, 505 ; *Jutte* v. *Hughes,* 67 id. 268, 272, 273 ; *Hay* v. *Cohoes,* 62 id. 159 ; *Wasson* v. *Pettit,* 49 Hun, 166, 167 ; *Seybolt Case,* 95 N. Y. 562 ; *King* v. *Pedley,* 1 Ad. & El. 822 ; *Waggoner* v. *Jermaine,* 3 Den. 306 ; *Fish* v. *Dodge,* 4 id. 311, 312 ; *Anderson* v. *Dickie,* 1 Robt. 238, 245 ; *Whalen* v. *Gloucester,* 4 Hun, 24, 28 ; *Walsh* v. *Mead,* 8 id. 387 ; *Hungerford* v. *Bent,* 55 id. 3 ; *Ahern* v. *Steele,* 48 id. 517 ; 115 N. Y. 203 ; *Davenport* v. *Ruckman,* 37 id. 568, 574 ; *Swords* v. *Edgar,* 59 id. 28 ; *Sandford* v. *Clarke,* L. R. [21 Q. B. Div.] 398 ; *Plumer* v. *Harper,* 3 N. H. 88 ; *Owings* v. *Jones,* 9 Md. 109 ; *Dalay* v. *Savage,* 145 Mass. 38 ; *Wunder* v. *McLean,* 134 Penn. 334 ; *Carson* v. *Godley,* 26 id. 111, 120 ; *Godley* v. *Hagerty,* 20 id. 387 ; *Ingwersen* v. *Rankin,* 47 N. J. L. 78 ; *House* v. *Metcalf,* 27 Conn. 631, 640 , *Helwig* v. *Jordan,* 53 Ind. 27 ; *Tomle* v. *Hampton,* 129 Ill. 379 ; *Pierce Case,* 72 Cal. 180 ; *Riley* v. *Simpson,* 83 id. 217 ; *Canavan* v. *Conklin,* 1 Daly, 509 ; *Kirby Case,* 14 Gray,

249; *Shipley Case,* 101 Mass. 251; 106 id. 194; *Holbrook Case,* 9 Allen, 17; *Elliot* v. *Pray,* 10 id. 378; *Readman* v. *Conway,* 126 Mass. 374; *Clancy* v. *Byrne,* 56 N. Y. 129; *Wolf* v. *Kilpatrick,* 101 id. 146, 147; *Edwards Case,* 98 id. 245; *Ryan* v. *Wilson,* 87 id. 471; *Miller Case,* 34 N. Y. S. R. 607, 608; *Davenport* v. *Ruckman,* 10 Bosw. 20, 32, 36; *Tate Case,* 64 Mo. 150; *Coupland* v. *Hardingham,* 3 Campb. 398; *Beans* v. *Ambler,* 9 Penn. 193, 194; *Murray* v. *Allison,* 24 N. Y. S. R. 817; *Staple.* v. *Spring,* 10 Mass. 72, 74; *McParthand* v. *Thous,* 24 id. 110; *Wasmer Case,* 80 N. Y. 212; *Duke's Case,* 51 Hun, 606; *Roswell* v. *Prior,* 2 Salk. 460; 12 Mod. 635; 1 Ld. Raym. 713; *King* v. *Pedley,* 1 Ad. & El. 822, 827; *Gandy* v. *Jubber,* 5 B. & S. 78, 86; *Hussey* v. *Ryan,* 64 Md. 427; *Lowell* v. *Spaulding,* 4 Cush. 277, 279; *Bates Case,* 151 Mass. 174, 184, 185; *Regina* v. *Watson,* 2 Ld. Raym. 856; *Rogers* v. *Stewart,* 5 Vt. 216; *Norton* v. *Wiswell,* 26 Barb. 618; *Henkell* v. *Murr,* 31 Hun, 28; *Camp* v. *Wood,* 76 N. Y. 92; *Martin* v. *Pettit,* 117 id. 118, 122; *Larney* v. *McLean,* 129 Mass. 33; *Watkins* v. *Goodall,* 138 id. 533; *Priest* v. *Nichols,* 116 id. 401.) The fact that there was no express covenant to repair the building, as between the owner and original lessee, nor as between such lessee and its assignee, transferee or agent, nor as between the sub-lessor and lessees, does not relieve or exonerate the lessee, or its assignee or agent, or the sub-lessees from liability for adopting and continuing the nuisance, to a third person who was injured by it. (*Odell* v. *Solomon,* 99 N. Y. 635; *Swords* v. *Edgar,* 59 id. 28; *Nugent Case,* 80 Me. 63, 77, 79; *Ingwersen* v. *Rankin,* 47 N. J. L. 18, 21; *Conover* v. *Conklin,* 1 Daly, 509; *Irvin* v. *Wood,* 4 Robt. 138, 143, 144; *Bears* v. *Ambler,* 9 Penn. 193, 194; *Regina* v. *Watts,* 1 Salk. 357.) There is abundant evidence to charge the defendants with knowledge of the dangerous and unsafe condition of the wall. (*C. S. Road* v. *B. R. Co.,* 51 N. Y. 573, 582; *Irvin* v. *Wood,* Id. 225; *Swords* v. *Edgar,* 59 id. 28, 39; *Wasmer Case,* 80 id. 212; *Wolf* v. *Kilpatrick,* 101 id. 147; *Wenglick* v. *McCotter,* 87 id. 122; 27 N. J. L. 457;

114 Mass. 149; *Helwig* v. *Jordon*, 53 Ind. 21; *Gandy* v. *Jubber*, 5 B. & S. 117; *King* v. *Pedley*, 1 Ad. & El. 822.) The court properly declined to direct a verdict in favor of the Acme Oil Company. (*Schmidt* v. *Keeler*, 32 N. Y. S. R. 11.)

PECKHAM, J.    The plaintiff brought this action to recover damages arising from the death of her husband, which occurred in the city of Albany, in September, 1885, and for which she claimed the defendants were liable.    She recovered a judgment at the Circuit, which has been affirmed at the General Term, and from the judgment of affirmance all the defendants have appealed to this court.    The New York Central & Hudson River Railroad Company owned the premises upon which the wall stood, the falling of which caused the death of the plaintiff's intestate.    For a number of years past, a firm named Strain & Reynolds had leased these premises from the railroad company, and in December, 1876, they sub-leased a portion of them to defendants Murphey & Liscomb for one year from May 1, 1877, and those defendants occupied such portion up to 1884, as tenants of the firm by reason of yearly renewals of the lease, either orally or in writing.    In 1884, the firm of Strain & Reynolds became the agents of the Standard Oil Company of New York.

In July, 1884, the New York Central Railroad Company, still being the owner of the whole premises, leased them to the Acme Oil Company, one of the defendants, for five years from May 1, 1884.    The firm of Strain & Reynolds in or about May, 1884, as agents of the Standard Oil Company, renewed the lease for one year to defendants Murphey & Liscomb, of that portion of the premises which they had theretofore leased to such defendants, and this lease was, on the 1st of May, 1885, again renewed by Strain & Reynolds as such agents, and in writing for one year from that date.    The individual defendants occupied the portion of the premises leased to them, and the Standard Oil Company occupied the balance, and such relative occupation existed on the 12th day of September, 1885, when the plaintiff's intestate was killed.    The

lease from the railroad company to the oil company contained a provision for its termination at any time before the expiration of the five years, at the option of the railroad company, by giving sixty days' written notice to the oil company of its option to so terminate it.

The lease from Strain & Reynolds to Murphey & Liscomb contained a similar clause providing for its termination in the same way. This option was in existence when the lease was renewed, May 1, 1885.

There is no direct evidence of the transfer by the Acme Company of its interest or any portion thereof in the lease above described, to the Standard Company or any other corporation or person.

The property thus leased from the railroad company is situated on the west side of, and immediately adjoining lands belonging to the Delaware & Hudson Canal Company upon which the canal company had laid its tracks, which at this point run about north and south. On September 12, 1885, the property was separated from that of the Delaware & Hudson road by a brick wall about 11 feet high and one foot wide, running north and south for a distance of about 111 feet, the wall being laid wholly on the land of the Central-Hudson R. R. Co., but within two inches of the line between the two companies. From the top of this wall there had been a shed roof running towards the west, which tipped in that direction, so that the water shed was away from the lands of the Delaware & Hudson Co. The wall formed the eastern boundary of the property leased to the Acme Company, and the propery thus leased and consisting of not much more than a rough shed was used as a storage place for oil and was but one story high. It was all one building at the time Strain & Reynolds leased it from the railroad company, and they leased the northern end to the individual defendants. There was never any dividing brick wall between the northerly portion occupied by them and the southerly portion occupied by the oil company. There was simply a fence or board partition running east and west and nailed against posts so as to distinguish

the parts occupied by each respectively. No barrels of oil were ever put against this brick wall by any of the parties. The brick wall from the northerly to the southerly end was one continuous wall with an angle, which was 68 or 70 feet from the northerly end and in the part occupied by the individual defendants.

The plaintiff's intestate was a laborer in the employ of the Del. & Hudson Canal Co., and on the 12th of September, 1885, he had gone to work to repair the tracks of that company opposite these premises. While working there the wall fell over and upon him and crushed him to death.

The wall, for about a distance of 60 feet, fell over, the northern end of the fallen portion being about five feet from the northern end of the wall. It is claimed that it was all on that portion of the premises which had been leased to the individual defendants. There was evidence on the part of the plaintiff tending to show that the wall had been in a leaning condition, out of plumb and dangerous for a number of years, and there was evidence from which a jury might infer knowledge by the oil companies of its condition, and that it was dangerous and liable to fall at the time when the lease was renewed in the name of the Standard Oil Company to Murphey & Liscomb, in May, 1885. There was also evidence from which the jury might have inferred negligence on the part of the oil company if its officers or agents were ignorant of this dangerous condition of the wall at that time.

The plaintiff claims to hold all the defendants on the ground that they were all guilty either of letting premises with a nuisance upon them of a nature dangerous to the public or an adjoining owner, or of maintaining such nuisance on premises leased to them while such nuisance existed.

The counsel for the Acme Company maintains there is no evidence to sustain a recovery against it. That company took the lease of the whole property from the railroad company. There is no evidence of any assignment or sublease to the Standard Company, nor any direct evidence upon the subject of the relationship between these two. The Standard Com-

pany admits for purposes of its own, that it has been the owner of the lease from the time of its execution, and that its liability is to be determined as if its name had been inserted in the lease. This does not absolve the Acme Company. The Standard may admit its own liability, but cannot by admission destroy that of the Acme Company to the plaintiff, if it otherwise exist. So far as appears there has been at least entire acquiescence on the part of the Acme Company in the assumption of power by Strain & Reynolds, acting as agents of the Standard Company, to lease a portion of the premises to the individual defendants and in their reception of rent. The Acme Company might have thus acquiesced, because they had transferred by assignment or sublease all their interest to the Standard Company at a time when they were entirely ignorant of the existence of any dangerous nuisance on the premises. They also might have acquiesced because, while taking the lease in their own name, they really took it as partners or joint owners with the Standard Company, although no formal transfer of the legal title or any portion of it had been made.

An equally strong inference possibly might be drawn as to the existence of either fact, and generally such a condition of the evidence would be fatal to the position of the plaintiff, who asserted the liability of the Acme Company. But the nature of the relationship between the two companies was a matter of evidence peculiarly, if not solely within their power to prove. *Prima facie* the Acme Company being the lessee, assumed the responsibility consequent upon such a position. If their relationship were such as to exempt the Acme Company from all liability, is it too much to assume that the fact would have been proved by it? If either one of two inferences could be drawn, the one inculpatory and the other exculpatory of the Acme Company, should not a jury be permitted to draw that one most favorable to the plaintiff when the Acme Company, with all the evidence in its own power and possession fails to produce it, and to thus dispel the doubt? I think the plaintiff's evidence left the Acme Company under an obligation to show exactly what the relationship was, or else to bear

the result of a possible unfavorable inference by the jury. (See *Schmidt* v. *Keehn*, 32 N. Y. S. R. 11, and cases cited in opinion; Stark. Ev. [Am. ed.] p. 762.)

I think, therefore, we must place both companies in the same condition and examine their liability as depending upon the same facts.

The individual defendants were not what is termed tenants from year to year, which, for the purpose of terminating the tenancy, may require notice, but they were tenants under a lease for one year, which had been renewed orally or in writing annually, and which had terminated May 1, 1885, and on that date had been renewed in writing until May 1, 1886.

The learned judge left it to the jury to say upon all the evidence whether the wall was in a dangerous condition and a nuisance in law against the adjoining owners and the persons living there at the time the Standard Company obtained the lease or the right to occupy under it, and at the request of the Standard Company he further charged that the plaintiff could not recover against that company unless they were satisfied by the evidence that the defendant knew, or ought to have known, or had notice that the wall was in a dangerous condition before May 1, 1885. I think this was a correct statement of the law. Under this charge the jury could have found that the wall was in a dangerous condition and was a nuisance when this sublease was executed to the individual defendants May 1, 1885, and that the officers or agents of the company knew before that time, or ought to have known that it was in this dangerous condition. With this knowledge they were bound to enter upon the premises and repair the wall, or take it down, or adopt some steps to avoid the danger before they relet them. If they chose to relet, they took the responsibility. (*Gandy* v. *Jubber*, 5 B. & S. 78; *Sandford* v. *Clarke*, L. R. [21 Q. B. D.] 398; *Clancy* v. *Byrne*, 56 N. Y. 129; *Ahern* v. *Steele*, 115 id. 203.)

This does not impose the duty of constant care and inspection of premises upon an owner who has let them. It imposes upon him the duty of reasonable care to inform himself of the

condition of property which he proposes to let, and if, at the leasing, he knew, or if, in the exercise of reasonable care, he would become informed of the fact that the property has upon it a nuisance dangerous to the public or to an adjoining owner, it imposes upon the owner and proposed lessor the duty to abate it before he leases such property, and if he do not, it leaves him with a liability to respond in damages to any one injured in consequence of and by the nuisance.

The companies occupied the position of owner of the premises in regard to their liability for a nuisance thereon when they came to sublet them. They were the immediate lessees of the whole property from the owners of the fee, and when they proceed to sublet it or a portion of it, they must stand at such time as owners thereof for all purposes connected with their leasing. The fact that their lessors had the right to terminate their lease upon giving them a written notice of sixty days, does not change the liability imposed upon them when they assumed to sublet a portion of the property with a known and dangerous nuisance thereon, a nuisance of such a character that it was liable at any moment to do damage to an adjoining proprietor or any innocent third person. They cannot be permitted to shield themselves under the plea that they are mere tenants, and that even as tenants they were not themselves occupying the premises, and were not in any sense owners thereof. While their lease lasted and while they were in possession of the whole premises they certainly had the right to repair them, so as at any rate to abate a nuisance dangerous to third parties. If, with knowledge of the existence of such nuisance, they choose to sublet all or a portion of the premises and thus secure compensation for the user thereof, every principle upon which an owner is held liable when he demises property under such circumstances, applies to the tenant of the whole property who sublets any portion thereof on which the nuisance or any part of it exists.

It was said by FOLGER, J., in *Swords* v. *Edgar* (59 N. Y. 28, at 38), which was the case of a pier out of repair, that it " was in a ruinous and dangerous condition when it was demised.

It was, up to the day of the demise, the duty of the defend-
ants solely, to see that it was in a safe condition.   There is no
suggestion in the case of want of knowledge on their part of
its actual condition when leased by them, and the facts of the
case are such that they are chargeable with knowledge of
its actual dangerous state." And the learned judge in that
case held that a lessor was guilty of a non-feasance or a misfeas-
ance if he have leased the premises in a dangerous condition
for the public, instead of first making them safe.

In *Todd* v. *Flight* (9 C. B. [N. S.] 377), decided in the
Common Pleas in 1860, an action was held to lie against an
owner who, with knowledge, leased his premises in a dangerous
condition (to wit, in such a condition as to be a nuisance),
where damage was caused to a third party after such leasing.
The opinion was delivered by ERLE, Ch. J., who held the
owner guilty of a wrongful act in knowingly renting premises
in a condition dangerous to the public or an adjoining owner.

The case of *Edwards* v. *N. Y. & Harlem R. R. Co.* (98
N. Y. 245), holds no different doctrine.   In that case it was
stated in the opinion that the owner is liable if he create a
nuisance and demise the premises with the nuisance on it.   .I
think that even if he do not create it, yet if, to his knowledge,
it exist on his premises at the time of the demise, and is of a
character dangerous to the public or an adjoining owner, or if
he were in truth ignorant, and yet by the exercise of reason-
able care and diligence he would have known of its existence,
there is no principle which can exempt him from responsibility
any more than if he created the nuisance himself.   The same
principle would hold the lessee of the whole premises, who, in
his turn and with full knowledge, leases to another the prem-
ises, or any portion of them, with the nuisance thereon.

The counsel for the companies says there was no attempt to
charge them as owners of the premises.   The court did in fact
charge that the owner was not a defendant.   It is plain the
expression was used with reference to the owner of the fee.
Whether they were called in express terms owners, is imma-
terial.   The court held them not liable unless they knew, or

ought to have known, before May 1, 1885, the date of the sub-letting to Murphey & Liscomb, that the wall was in a dangerous condition amounting to a nuisance to adjoining owners or persons living there. This is the substance of the text of the charge taken in connection with the request of counsel to charge, which was granted.

It is true that the limitation as to the knowledge of the corporation before the 1st day of May, 1885, was spoken of only with reference to the Standard Company. But the request to charge was limited to that company, and notice to that company might be regarded as notice to the Acme Company, in case the jury should find the proper inferences above spoken of with reference to the liability of that company, and hence if the counsel for the Acme Company were not satisfied with the limitation, he should have brought the matter specifically to the attention of the court, and should have asked it to extend the charge in terms to the same company.

The cases have all been recently reviewed in the exhaustive opinion rendered in *Ahern* v. *Steele (supra)*, and it is unnecessary to further elaborate the discussion. I have looked carefully over all the exceptions taken on the part of the counsel for the corporation defendants, and find none upon which to base a reversal of the judgment in this case.

A somewhat different question is presented in the case of the individual defendants. By the charge of the learned judge, they were held liable unconditionally, if the jury came to the conclusion that the wall was in a dangerous condition and a nuisance at the time Murphey & Liscomb leased the premises in 1885, although they then may have known nothing of the dangerous condition of the wall, and may possibly have remained ignorant without being guilty of negligence up to the time when the accident occurred.

I think the later cases, and especially the case of *Ahern* v. *Steele (supra)*, reported since the trial of this action, have cleared up any doubt which may have heretofore existed regarding the ground of the liability of a grantee or lessee of real estate with a nuisance upon it, arising from the premises

being out of repair. Assuming the liability of the lessee under some circumstances, it does not arise upon the mere execution of the lease. There must be notice of the existence of the nuisance, or time enough must have elapsed in which knowledge of its existence would be obtained by the exercise of reasonable diligence. For the error in the charge of the learned judge, regarding the individual defendants, there must be a new trial.

It might also be somewhat of a question whether they would be liable upon the facts herein viewed in any light. They were never the lessees of the whole premises, in regard to which the wall formed a continuous and solid boundary. Would it be maintained that tenants of rooms in a tenement-house, or of flats in a building rented for that purpose, would be responsible to the public, or to adjoining owners, if they neglected to repair one of the main walls of the house, which was out of plumb and dangerous to their knowledge? Does the rule as to maintaining a nuisance upon real estate dangerous to the public, apply in case of one who has but a possession of a portion of the premises, and where the nuisance consists in the dangerous condition of a wall such as existed in this case?

It is true there is a difference in the situation of the tenants in the tenement-house and persons situated as were these individual defendants, assuming they had knowledge of the dangerous character of the wall. Exactly what their duty and liability were, is not entirely clear. A tenant at will of a house which was in a public highway, and in a dangerous condition and liable to fall at any time, has been held liable to indictment as maintaining a public nuisance. (*Reg.* v. *Watts,* 1 Salk. 357.) He was a tenant of the whole house, however, and not of only two or three rooms in it. The court held that the owner of the real estate was not looked to in such case; it was the occupant, and it was to guard the public safety that he was held, no matter how precarious his title was in point of time.

The questions as to the duty and liability of the individual

defendants are important, but it is not necessary to now decide them.    Another trial might so result that they would not arise.

For the error in the charge above alluded to, the judgment as to the individual defendants must be reversed and a new trial granted, with costs to abide the event, but as to the corporation defendants, it must be affirmed, with costs.

All concur.

Judgment accordingly.