(7 Misc. Rep. 113.)

## CANAVAN v. STUYVESANT et al.

(Common Pleas of New York City and County, General Term.   February 5, 1894.)

1. NEGLIGENCE—DANGEROUS PREMISES.
    Where plaintiff was injured by falling down a cellar way on defendant's premises, he cannot recover on the ground that defendant was negligent in failing to replace a part of the cellar door, which was broken off, where it appears that the accident was not caused by the defective condition of the door, but by the fact that the door was open, and there was no evidence to charge defendant with negligence in leaving the door open.

2. EVIDENCE—JUDICIAL NOTICE.
    The court will take judicial notice of the fact that the streets of New York city are numbered east and west from Fifth avenue, and that the odd numbers are on the north side of the street.

3. LANDLORD AND TENANT—DANGEROUS PREMISES—LIABILITY OF LANDLORD.
    Where the occupants of a tenement house are permitted, without objection, to use the yard, and there is no restriction in the lease against such use, an easement is thereby created in favor of the tenant, and the landlord is liable for injuries resulting from his failure to make the yard safe.

Appeal from trial term.

Action by Thomas J. Canavan, an infant, by Michael Canavan, his guardian ad litem, against Robert Van R. Stuyvesant and others for personal injuries.   From a judgment dismissing the complaint, plaintiff appeals.   Reversed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Jeroleman & Arrowsmith, for appellant.

J. Langdon Ward, for respondents.

BOOKSTAVER, J.   This action is unique among negligence cases, in that it was brought to recover damages for injuries alleged to have been sustained by the plaintiff on two entirely different occasions, and both within six months of each other.   The first occurred on the 1st July, 1891, by falling down the cellar-way of the premises known as 341 East Thirteenth street, New York city, and the second on the 4th November, 1891, by falling down an air shaft in the rear of said premises.   On the trial the complaint was dismissed at the close of the plaintiff's case.   Hence this appeal.   As the circumstances of each accident were different, they must be separately considered.

The defendants, together with one Rosalie S. Pillot, who died before the commencement of this action, were the owners of the premises in question.   The parents of the plaintiff, at the time of the alleged injuries and for nine years prior thereto, lived in the house where the accident occurred, occupying six rooms on the ground floor.   In front of the house there was a courtyard the whole width of the lot and about 17 feet in depth.   Between the yards of Nos. 339 and 341 there was an iron fence or railing, two or three bars of which were out at the time.   There was an iron railing in front of the yard along Thirteenth street, in which there

was a gate opposite the door of the house, which was on the east side of the premises. There was an entrance, or cellar way, to the basement toward the west side of the courtyard. To this cellar way was a double door, or two half doors opening in the center; the one hinging so that it turned toward the west, and the other toward the east. About 18 inches were broken off from the front end of three of the boards composing the west half of the door, leaving a hole, when the door was closed, about 16 inches by 12. This door had been in that condition five or six weeks prior to the 1st July. One or the other of the halves of the door was generally open in the daytime, for ventilation, and closed at night. On the 1st July the plaintiff, who was at that time about two and a half years old, came unattended from the yard of 339 through the fence between the two houses where the bars were missing. At that time the half of the cellar door nearest 339, which was the west half, was open. The plaintiff stepped on that door and fell down into the cellar. He was picked up by one Thomas Kelly, and on examination it was found that his right wrist was broken. Upon the trial and the argument of this appeal the appellant contended that the broken door was the cause of this injury, and that it was negligence for the defendants to have left it in that condition for the length of time they did, when they must have known of its defect, or by proper supervision could have known of it. But it is clear, from the evidence in this case, that the broken door had nothing to do with the accident. Plaintiff's father definitely testified that the boards were broken off the front part of the west door, while Kelly, the only witness of the accident, distinctly testifies that the half of the cellar door near 339 was open. This must have been the westerly half door, for the court is justified in taking judicial notice of the fact that the streets are numbered east and west from Fifth avenue, and that the odd numbers are uniformly on the north side of the street. Kelly also testifies that no one was with this very young child. The mother testified that she was in the house at the time, and there is no evidence whatever of any person being appointed to look after him, or that any one did look after him while out of the house on this occasion, although the parents well knew that one or both of the cellar doors were left open at the time. He certainly was not sui juris, and not of sufficient age or discretion to permit him to wander out of the house alone. It was not shown who opened the half of the cellar door that was open. The father testified that one or both of the doors were generally open in the daytime and closed at night. Therefore there was nothing from which the jury could rationally draw an inference of negligence on the part of the defendants in respect to the open door, while the plaintiff was far from establishing the burden which was upon him of showing that he or his natural guardians were free from negligence. We think neither chapter 566, Laws 1887, nor section 69 of the Sanitary Code of the Health Department, applies to a cellar-way like the one in question. Therefore, as to this cause of action, the court properly dismissed the complaint.

It is different, however, as to the second cause of action. While it is true that the parents of the child hired only the six rooms on the ground floor, and did not in terms hire either the front or rear yard, yet for the nine years they had been on the premises they were in the habit of drying their clothes there, and all the children in the house, including plaintiff, had been in the habit of playing in that yard, and these uses of it had never been forbidden by the defendants or any one in their employ. Respondents contend that neither the hiring nor the uses stated made the rear yard appurtenant to the rooms hired by plaintiff's father, and in this we think they are correct. But it is conceded that the house contained, or was calculated to contain, six other families, thus making it a tenement house within the meaning of chapter 84, Laws 1887, as it contained more than three families; and the defendants had the right at all times to enter and make repairs, and were in duty bound to keep the premises in reasonably tenantable order and condition, and free from nuisances. Henkel v. Murr, 31 Hun, 28; 2 McAdam, Landl. & Ten. 185, 191, 193, and cases cited. Although the use of the yard permitted by the defendants did not make it appurtenant to the premises occupied by plaintiff's father, yet the free access to it through the hallway on the first floor, provided by the defendants, and its use by all the families in the building, did create an easement in the yard, and such, we think, in the absence of restrictive words in the lease of plaintiff's father, was the manifest intention of the parties. There were no other apparent purposes to which it could be subjected than the uses made of it. Doyle v. Lord, 64 N. Y. 436. The air shaft was built against the wall of the house, and extended out from the rear wall three feet into the yard, and was about six feet deep. It was surmounted by a stone coping, and an iron grating, weighing somewhere between 30 and 50 pounds, had been provided to cover it. At the time of the second accident, on the 4th November, 1891, this was not in place, and had not been for two months, but was lying in the cellar. The plaintiff's mother was hanging out clothes in the yard. The plaintiff, then about three years old, was playing ball with his sister, who at the time was about four or four years and a half old. While running after the ball, plaintiff accidentally fell into the air shaft.

It cannot be denied that, under the circumstances, this rear yard was a proper place for the children to play in, and they were playing under the immediate supervision of the mother. It was impossible for her to do her work and keep her eye upon the children at all times. We think it was the clear duty of the defendants to have kept the grating over the air shaft in place, or so secured it that it could not easily have been moved. It had been off so long that a jury could reasonably have inferred from that fact that the defendants were guilty of negligence, in that they either allowed it to be off after actual knowledge of it, or could have ascertained that fact by reasonable diligence. Driscoll v. Mayor, 11 Hun, 101; Timlin v. Oil Co., 126 N. Y. 514, 27 N. E. 786; Embler v. Town of Wallkill, 132 N. Y. 222, 30 N. E. 404. Besides,

it appears from the evidence that both the defendants' janitor and collector had actual notice or knowledge of its dangerous condition. A landlord of a tenement house is bound to keep the yards, hallways, coal holes, etc., in proper repair and reasonably safe condition, and is chargeable in damages to any one injured for a failure to do so. Dollard v. Roberts, (Sup.) 8 N. Y. Supp. 432; ; Id., 130 N. Y. 269, 29 N. E. 104; Henkel v. Murr, supra; Palmer v. Dearing, 93 N. Y. 7; Jennings v. Van Schaick, 108 N. Y. 530, 15 N. E. 424; Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077; Ahern v. Steele, 115 N. Y. 203, 22 N. E. 193. We think the court erred in dismissing this cause of action, but should have submitted it to the jury.

Had we the power, we would affirm the judgment as to the first cause of action, and reverse as to the second; but under Goodsell v. Telegraph Co., 109 N. Y. 147, 16 N. E. 324, followed by us in Elwell v. Fabre, (Com. Pl. N. Y.) 13 N. Y. Supp. 829, we feel constrained to reverse the judgment in its entirety, and to order a new trial, with costs to the appellant to abide the event. All concur.