LENZ v. ALDRICH.

(Supreme Court, Appellate Division, Second Department. June 23, 1896.)

NEGLIGENCE—DANGEROUS PREMISES.

The owner of an apartment house, in the yard of which clothes poles were erected for the use of the tenants, is not required, during the time that such poles should ordinarily be safe, to make a critical inspection thereof, if there is nothing to cause a suspicion that they are unsafe. Hatch, J., dissenting.

Appeal from special term, Kings county.

Action by May Augusta Lenz, an infant, against Elizabeth W. Aldrich, for personal injuries. The complaint was dismissed on the merits, and plaintiff appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Niles & Johnson (Wm. W. Niles, Jr., of counsel), for appellant.

James L. Barger, for respondent.

CULLEN, J. We agree with Mr. Justice HATCH in his view of the facts that the record before us presents, and shall add nothing to his statement, referring only to such facts as in our judgment control the disposition of the case. We differ from our associate in that we think that the facts are insufficient to warrant a jury in imputing negligence to the defendant. It was proven that the clothespole, when originally put up, was a good pole, and of proper material for the purpose. The life of such poles the evidence shows to be from eight to ten years, and this pole had been up but five years. The pole, at the time of the accident, had rotted almost through, about an inch above the ground. Experts testified that the decay must have been going on for a year. During this period the pole had been in constant use, and no one had noticed the decay, or any weakness or instability in it. From these facts two conclusions are irresistible: First, that ordinary, cursory examination would not have disclosed the decay or defect; second, that a critical examination or inspection would have exposed it. Neither the defendant nor her janitor had any knowledge or notice of the decayed condition of the pole. This, however, would not give the defendant immunity from liability, if, in the exercise of reasonable care, she or her agent should have discovered the defect. The question is therefore narrowed to this: Should the defendant have made a critical examination, in detail, of a clothespole, during a period when, by the ordinary life of such poles, the pole should have been sound, and there was nothing to give occasion for suspicion to the contrary? We think not. The case is not similar to that of a bridge, a high scaffold on which men are to work, or even to that of a telegraph pole in the public highway. In such cases the danger from defects in the structures are great, and if accident occurs it is apt to be serious in its results. The clothespole was some six inches or more in diameter, and seven feet high,—no very formidable structure, at the most. It was one of those common structures or appurtenances, used in or about dwellings, that, unless so old as to cause suspicion of unsoundness, are never subjected to more than a cursory examination. No one causes his ceiling to be inspected and carefully examined, unless cracks or other signs of weakness appear. One trusts to the security of the balusters along his stairs, so long as no signs of weakness or instability are manifest. The same is true of a fence; of the doors, windows, and stairs in a house. This conduct is justified by two reasons: First, the danger from defects in these structures, or parts of structures, is not apt to be great; second, nearly always, before they become so defective as to be dangerous, they show preliminary signs of weakness or insecurity manifest to the casual observer. We could permit a verdict for the plaintiff in this case to stand only by wholly discarding our common knowledge of the habits and conduct of the community. We are not wanting in authority to justify this conclusion. In Flood v. Telegraph Co., 131 N. Y. 603, 30 N. E. 196, a system of inspection of the cross-arms of telegraph poles by looking at them from the ground was held sufficient, as against the servants of the defendant, the linemen, who in the course of their

employment had to climb the poles. In Alperin v. Earle, 55 Hun, 211, 8 N. Y. Supp. 51, the defendant was held not liable for a failure to discover the defect in a slat which had decayed on the under side, though a careful examination of the slat would have disclosed the defect.

The judgment appealed from should be affirmed, with costs.

BROWN, P. J., and BARTLETT, J., concur. PRATT, J., does not vote.

HATCH, J. (dissenting). By this action damages are sought to be recovered for personal injuries inflicted upon plaintiff by the falling of a pole standing upon defendant's premises. The plaintiff, at the time of the reception of the injury, was between nine and ten years of age, and resided with her parents in an apartment house owned by defendant, known as "No. 6 Ocean Place," in the city of Brooklyn. The apartments in this building were let to several different families, of which plaintiff's family was one, who occupied the same. But defendant, as landlord, retained control of the building and of the yard in the rear thereof, and cared for and looked after the structures thereon. Within this yard there were erected four poles, about six inches in diameter at the base, and slightly tapering towards the top. Lines were attached thereon, and the same were used by the occupants of the building for the purpose of hanging clothes to dry. It appeared, without dispute, upon the trial, that plaintiff and other children of her family were in the habit of making use of this yard as a place to play. The plaintiff alleged in her complaint that she was lawfully upon the rear of the lot, and, while this allegation of the complaint was denied by the answer, yet upon the trial no point was made that plaintiff was not lawfully upon the premises when she received the injury, but it was assumed that she was lawfully there; and it appeared, without dispute, that this rear part was frequently used by the children as a playground. The pole which fell was placed where it stood, as were the other three, when the house was erected, in the spring of 1889. They were chestnut poles, and were supposed to be of the first quality when placed. It was testified to upon the trial that the life of such a pole, set as this was, was from eight to ten years. The poles were in constant use by the several inmates from the time they were placed up to the day of the accident, which occurred on the 17th day of August, 1894. The poles had been in the ground something over five years. At the time of the injury, plaintiff, in company with her sister, a small child, and another small girl, not of the family, went to the yard to play. While there, plaintiff reached up, took hold of the rope attached to the poles,—it being within easy reaching distance,—and stepped one or two steps forward and backward, when the pole fell and inflicted the injuries complained of. Examination of the pole disclosed that it was rotted clear through, only a slight portion being sound, at a point from a half to an inch above the ground, and it was testified that this condition must have existed for about a year. This fact was not controverted by de-

fendant. At the close of the proof the court dismissed the complaint upon the ground that negligence of the defendant was not established. This ruling proceeded upon the specific ground that the poles were in use every week, which constituted a test of their soundness and safety; and, while it is not stated in language, yet the clear inference is that the court held, as matter of law, that defendant had discharged whatever obligation and duty rested upon her, and that, therefore, no liability attached. It seems clear that this ruling cannot be sustained upon the ground asserted by the court. While constant use, without accident or appearance of weakness, may be evidence of fitness of the thing used, it is by no means conclusive evidence. It may, under certain circumstances, be the very thing which calls for examination and care, as where such use tends to the direct weakening of the structure used. Thousands of people may make daily and safe use of a wooden approach to a building, yet, as use by each person tends to its weakening and ultimate destruction, and as it is liable to decay, the owner may not shelter himself from obligation by relying upon constant use as a conclusive test of its fitness and security. The fact of such use is notice that the structure is becoming weakened, and, instead of relieving from the duty of examination, it furnishes the reason for its exercise. So here the fact of the daily use of these poles, while evidence that they were fit and proper for the purpose used, was not conclusive of the fact, to the extent of saying, as matter of law, that no examination was required, and that because they did not fall when so used created the conclusive presumption, upon which the landlord might rely, that they were sound. Such ruling is opposed to the theory upon which liability has been asserted for injuries received from defective structures, which, falling, have occasioned injury. Mullen v. St. John, 57 N. Y. 567; Timlin v. Oil Co., 126 N. Y. 514, 27 N. E. 786; Hogan v. Railroad Co., 149 N. Y. 23, 43 N. E. 403.

Let us now see if this ruling can be supported upon other grounds. It is claimed that the complaint is fatally defective in that it alleges solely that defendant is the owner of the property, and does not allege that she was aware of, or was required to have knowledge of, the defective condition of the pole. The complaint does allege that defendant erected and maintained the poles, and this allegation is admitted by the answer; and the proof upon the trial was that defendant had charge of this structure and place, and from time to time, through her agents, inspected the premises. I am of opinion that the complaint was sufficient in this respect. As I have before observed, no point was made upon the trial that plaintiff was not rightfully in the yard, nor could the point have been legally sustained, had it been made. This was a place where children played. A swing for children had at one time been attached to the pole which fell, and the fence, but it was removed some time prior to the accident. The yard had been used by the children for so long a period that notice of such fact must be presumed to have been brought to the attention of the landlord, especially as she kept a janitor upon the premises, who must have had actual notice of such fact.

At least, the jury would be authorized so to say. This condition removes the case from the doctrine of the Fire Escape Case (McAlpin v. Powell, 70 N. Y. 126), and also from that of the Turn-Table Cases (Walsh v. Railroad Co., 145 N. Y. 301, 39 N. E. 1068). The latter case, while expressly repudiating the rule applied in the Turn-Table Cases, nevertheless recognized liability for a negligent act committed in a place where children might lawfully be, where by such negligence injury was inflicted. Saying of the case of Lynch v. Nurdin, 1 Adol. & E. (N. S.) 29, 41 E. C. L. 422:

"Leaving a horse and cart in a public street, unattended and loose, subject to natural observation and interference from children passing along the street, might be held a proper question for the jury to say whether it was or was not negligence."

In Canavan v. Stuyvesant, 7 Misc. Rep. 113, 27 N. Y. Supp. 413, the common pleas of New York held that tenants of a tenement house had an easement in the yard attached to the premises, for the purpose of drying clothes, and that it was a proper place for children of the tenants to play, under circumstances in many respects similar to the case now before us. I am of opinion, therefore, that no negligence could be attributed to plaintiff for being in the place where she was at the time when she received the injury. But this would not entirely exonerate her. It was conceded upon the trial that she was sui juris, and consequently the duty was imposed of exercising care; not necessarily the care of an adult person, but such degree of care as would reasonably be expected of a child of her age and capacity. Swift v. Railroad Co., 123 N. Y. 645, 25 N. E. 378. If she could see the defect in this pole, and was cognizant, or ought to have been, of its dangerous condition, and that it would be liable to fall if she took hold of the rope and swung or bore weight upon it, then she would be chargeable with negligence. But of these questions it was the province of the jury to give answer, and nothing which appeared in the case made it a question of law for the court. Whether the case presented proof which authorized a finding of negligence upon defendant's part is a question not free from difficulty. It is well settled that the defendant, having reserved control and dominion over this yard, as to it retained the responsibility of general owner to the tenants of the building, and to all persons who were or might be lawfully thereon. This obligation is defined to be the exercise of reasonable care in keeping the structures upon the premises in suitable repair and condition, safe for the use required of them, or of which he has a reasonable expectation that they may be used. Muller v. Minken, 5 Misc. Rep. 444, 26 N. Y. Supp. 801; Dollard v. Roberts, 130 N. Y. 273, 29 N. E. 104; Looney v. McLean, 129 Mass. 33. It is not essential that the landlord should have had actual notice of the existence of the defect. Such notice may be presumed from the length of time the structure has been out of repair, the character of the defect, the opportunity for observation, and many other conditions of which reasonable care would apprise him. These circumstances may constitute an unreasonable omission to ascertain the existence of the defect, and become the equivalent of actual notice. Alperin v. Earle, 55 Hun,

211, 8 N. Y. Supp. 51; Henkel v. Murr, 31 Hun, 28.     In Montieth v. Finkbeiner (Sup.) 21 N. Y. Supp. 288, the defective step from which injury was sustained had been in a dangerous condition for eight months, and it was held to be an unreasonable omission upon the part of the landlord not to ascertain its condition.     In the present case the proof tended to establish that the rotten condition of the pole must have existed for about a year.     Whether the place where it was rotten was visible to ordinary inspection or not, the case is silent.     It was above ground from a half to an inch.     It does not appear that there existed any obstruction which prevented its being seen, or but that a casual glance would have disclosed its condition. On the other hand, those who used it had not observed its defective condition, and there does not appear to have been any actual notice given, or complaint made.     The time that elapsed during which the defective condition existed was abundant for discovery, had inspection been made.     But whether, having first supplied suitable and proper poles, whose life was to be from eight to ten years, which had not yet expired, reasonable care required inspection, is not entirely clear.     Upon this point difference of opinion arises.     But it seems to me to present a case where conflicting inferences may be drawn, and under such circumstances the question is for the jury. Stackus v. Railroad Co., 79 N. Y. 464.     If the jury, upon a case properly submitted, should find that defendant had, or ought to have, taken notice of the defective condition of this pole, then I think it would be entirely clear that if a tenant had been injured while hanging clothes upon the lines, without fault upon her part, liability would have attached to the defendant.     Is this result changed under the circumstances which attended the reception of this injury in the present case?     We have seen that the child was properly in the yard; and that she might be there, defendant knew.     What use would children at play be likely to make of this structure?     Was the use which was actually made such that reasonable contemplation would not have considered probable?     It seems to me that children at play were likely to catch hold of the poles, lean against them, twist around them, or attempt to sway their bodies back and forth by catching the lines.     It appears that the latter were within easy reach; that what plaintiff did was to take hold of it with her hands, bring some portion of her weight upon the rope, and move back and forth.     How much weight she in fact bore upon the rope can only be arrived at by inference.     It could not have greatly exceeded, if it did at all, the weight of wet clothes hung upon the line. I think that what this child did was no further beyond reasonable contemplation than was the climbing into the cart in the Lynch Case, supra, where the ground upon which liability attached seems now to have received the sanction of the court of appeals in the Walsh Case, supra.     In Canavan v. Stuyvesant, supra, the court upheld a recovery where the child was playing in a yard, and fell into an open airshaft which had been left uncovered.     The court there held that the absence of the covering authorized the inference of negligence, in that they allowed it off after actual knowledge, or could have ascertained that it was gone by reasonable diligence.     In

Swinarton v. Le Boutillier (Com. Pl.) 28 N. Y. Supp. 53, the court held defendant liable for injury to a customer in his store, occasioned by the mischievous act of a boy in his employ, who snapped a pin which struck plaintiff in the eye. And this liability was placed upon the doctrine of actionable negligence solely, the court making application of the principle that defendant had omitted the obligation of reasonable care. It would seem that the doctrine of these cases has application to the facts of the present, and that the case presented a question of fact for the determination of the jury.

This discussion has proceeded thus far upon the doctrine of actionable negligence. But there is another principle of law applicable, which imposes a more absolute duty. The jury would have been authorized to say that the ease with which this child pulled this pole over, and the injuries which followed, made this structure a nuisance, and dangerous as a trap. In the present case the defendant owed a duty to the plaintiff. She was not a trespasser. She was rightfully upon these premises, and with the landlord's consent. The duty which defendant owed was to keep the place reasonably safe. She could not maintain a dangerous structure, which the child might use, and then exempt herself from liability by saying that it was not intended for such use. One who makes an excavation so near the highway that persons may fall therein is required to protect it. And when the owner of land invites another, either expressly or by implication, to come thereon, he cannot permit anything to exist thereon, in the nature of a snare, without being answerable for the consequences, where the person injured exercises ordinary care. This rule is recognized and asserted in the McAlpin and Walsh Cases, supra. The basis of the distinction rests in the fact that a duty is imposed. When this exists, liability follows for the maintenance of all structures, not apparently dangerous, which conceal a latent hidden danger, through which a person ignorant of the condition, and acting circumspectly, receives an injury. Hooper v. Railroad Co., 59 Hun, 125, 13 N. Y. Supp. 151, recognizes this principle, and illustrates its application by the distinction which it draws. In the present case, plaintiff had as much right to rely upon the fact that if she touched the lines the poles would not fall, as she had to assume that there were no pitfalls into which she might be cast. She had no more reason to apprehend that the pole would fall than that the wall of the house would, unless she knew, or ought to have known, of the defect. And defendant had no more right to maintain the one in a dangerous condition than she had the other,—no more right to allow rotten structures upon her premises, where they might fall or be pulled over by persons lawfully thereon, and inflict injury, than she would have to maintain an open airshaft, an unprotected excavation, a pile of material, or other dangerous structure which persons might make use of, come in contact with, or fall into. I am therefore of opinion that a case was presented for the jury upon both grounds herein discussed, and that the dismissal of the complaint was error.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event.