(30 App. Div. 232.)

## WOODS v. MILLER et al.

(Supreme Court, Appellate Division, Second Department. May 24, 1898.)

1. NEGLIGENCE—DANGEROUS PREMISES—DUTY TO FENCE ROOF.
   An owner of premises partly covered by a building, and bounded by party walls, is under no obligation to fence the top of the party walls so as to protect persons who may be on the roof of adjoining buildings from falling over into his yard.

2. SAME—FIREMEN.
   There is no exception to this principle in favor of firemen using the roof of the adjoining building in the performance of their duties.

3. SAME—CONTRIBUTORY NEGLIGENCE.
   The fact that a fireman, walking about at night on a roof, in dense smoke, in coming to a coping 10 inches high, stepped over it, without investigating what was beyond, constitutes contributory negligence on his part, as matter of law.

Appeal from trial term, Kings county.

Action by Frank L. Woods against Charles Miller and Frederick B. Losee. From a judgment dismissing the complaint, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

William P. Pickett, for appellant.
J. Stewart Ross, for respondent Charles Miller.
Thos. H. Williams, for respondent Frederick B. Losee.

GOODRICH, P. J. In 1895 the plaintiff was a fireman in the Brooklyn fire department, with which he had been connected for 10 years. During the night of the 22d of September of that year, there was a fire in a four-story building known as "No. 1434 Broadway"; and, in the discharge of his duty, the plaintiff went upon the roof of the building. While groping his way in the dense smoke, he stepped over a low parapet or coping, and fell into an opening, and to the ground, receiving serious injuries. He brought this action to recover the damages sustained by him, and at the close of his evidence the court dismissed the complaint. From the judgment entered thereon, this appeal is taken.

It will be observed that the foregoing brief statement contains no reference to the connection of the defendants with the premises, No. 1434 Broadway. This can be shown more clearly by reference to the following diagram of the roof, the scale of which is only approximate:

The defendant Miller was the owner of the premises No. 1432, which had been built upon several years before the accident, and he had leased them to Losee. The building was occupied by several families, and, for their convenience and protection, there was a picket fence around a part of the roof space, about 10 feet back of the place marked "Opening." The defendants had no connection with the building No. 1434, except that the wall between the two buildings was a party wall. The place where the plaintiff fell was over a part of the party wall between lots 1432 and 1434, where there was a parapet about 10 inches in height, covered by a bluestone coping about a foot in width, but no other guard or protection. The party walls on each side of the defendant's house and the rear wall of his building form an irregular quadrilateral opening, as shown on the diagram, which is the part of the defendant's lot not built upon or covered by his building, and forms a back yard, or, as the plaintiff calls it, an air shaft. It will be observed that no part of the defendant's building adjoined the place where the plaintiff fell over. That place was several feet distant from the rear wall of his building. At the time in question a fire had occurred on the premises No. 1434. The plaintiff, with other firemen, was ordered by his superior officer to go upon the roof of that house to extinguish the fire, which was breaking through the roof, just forward of the dumb-waiter house. There was a considerable volume of smoke, which obscured the scene. The plaintiff, in trying to get to the windward of the smoke, went to the back part of the roof, in order to use the hose, and, while doing so, stepped over the parapet, and fell into the opening.

It is, at first blush, somewhat difficult to understand the reason

which induced the plaintiff to select the defendants as the persons against whom he should bring this action. It may be found in the following allegation of the complaint:

"Second. On the said 22d day of September, 1895, there was in said building an air and light shaft, extending from the first story upwards about forty feet, to the roof of said building, which was a flat roof, and on a level with the roofs of the adjoining buildings. Said air and light shaft ended in an opening in said roof, in the form of an irregular quadrilateral, about ten feet in length and about six feet in width. Said opening in said roof had no cover thereon, and the same was not inclosed by a railing, or guarded in any manner whatsoever. Said uninclosed and unguarded opening in the roof of said building was dangerous to life and limb, and constituted a nuisance. This condition of affairs had existed for more than a year prior to said 22d of September, 1895, and was known to the defendants, who carelessly and negligently allowed the same to remain in this dangerous condition, but was not known to the plaintiff."

The theory of the plaintiff seems to be that the owner of premises is bound either to cover his entire lot with buildings, or to fence out all persons against the danger of falling into the back yard of such premises, and that such duty is commensurate with, but in inverse proportion to, the size of the yard. If the yard is small, the duty is great; if the yard is large, the duty is small. Following out the logic of his contention, one of two duties lies upon the owner: Either he must have no back yard, or, if he has a back yard, he must fence the surrounding party walls, if there be any, in such a manner that a party entering upon the roofs of the adjacent houses cannot fall into his back yard. This is reductio ad absurdum; but, to reverse the decision of the trial term, we must hold it to be the law. Originally, there was no structure on the ground at the bottom of the opening; but some time prior to the accident the tenant, Losee, who kept a drug store on the ground floor, had extended it by building a glass roof over the yard or opening, at the height of the store ceiling, thus forming a rear room to his store. Otherwise the opening was unimpeded to the top of the roof. It is not singular that the learned counsel for the plaintiff says, "The case is believed to be a novel one in this state." He cites in support of the plaintiff's right, Swords v. Edgar, 59 N. Y. 28, and Ahern v. Steele, 115 N. Y. 203, 22 N. E. 193. These were actions against the owners or occupants of piers in the city of New York, which broke down and injured persons rightfully on them. The point decided in these cases was that the occupant of such a pier is bound to keep it in repair and safe condition, and for failure to do so, to such an extent that a nuisance is created, he is liable for damages occasioned by the defective condition. Timlin v. Oil Co., 126 N. Y. 514, 27 N. E. 786, was a similar action against an occupant of premises which were allowed to fall into such bad condition that a wall fell and injured a person. The court held the occupant liable. It was hardly necessary to cite authority upon this elementary legal proposition, but we cannot see the application of the principle to the case at bar. The case of Low v. Railway Co., 72 Me. 313, is easily distinguishable. It holds that a customs officer, where duty required his presence on a wharf, was not a mere licensee, as his presence there was made necessary by the business to which the defendant had dedicated its wharf; that

is, to the public use thereof by vessels discharging cargoes from abroad, over which the officer had control under the laws of the United States. In this case the defendant was held liable for failure to provide either a light upon or a railing around a gangway over which the plaintiff was passing, in consequence of which he fell into the slip. The case of Learoyd v. Godfrey, 138 Mass. 315, was a case where an injury happened to a police officer who went on the defendant's premises to arrest an offender, and fell into an unprotected well or opening on such premises. Here the well was on the premises where the policeman went in the discharge of his duty. The case differs materially from the one at bar. If it decides anything of use to the plaintiff here, it may be that it declares some liability on the occupant of No. 1434; but it cannot be applied by us to any duty owing by the owner of No. 1432, unless we are prepared to hold that an owner of a party wall, a part of which is not in use by him, but is in use by the other part owner, is bound to build a fence at the top of an unused part, to prevent the fall of any one from the roof of the premises owned by the party who is using that part of the wall.

Another principle claimed by the plaintiff's counsel is cited from Shear. & R. Neg. § 704, where the doctrine is stated:

"The occupant of land is bound to use ordinary care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, express or implied, for the transaction of business, or for any other purpose beneficial to him."

It may be observed, in passing, that the only time when the plaintiff came on the defendant's premises was when he fell into them; but it can hardly be said that this is such an entry as was contemplated in the citation. This doctrine might have been cited with more effect in an action against the owner of No. 1434, from the roof of which the plaintiff fell, but I cannot see in it any opposition as to the defendant's liability. The duty which a fireman undertakes to perform is an important one for the public, and it is bravely fulfilled, often at risk of life and health; but this duty is one which arises from the nature of the service. This duty, however, very seldom requires the presence of firemen upon any particular roof, though in the aggregate they go upon many roofs. It cannot be held that the occupant of premises is required to provide for their occasional and unusual presence on a roof, so as to impose upon such occupant the duty of fencing every part of the roof,—back, front, and sides, wherever the roof ends,—in order to prevent the firemen from the danger of falling over the unguarded edge. The fact that roofs are not ordinarily fenced around in this manner gives ample notice to the fireman that he may not approach the edge without ascertaining whether danger lies beyond it. Moreover, in the present instance there was a coping 10 inches in height, and this afforded notice to the plaintiff that he had come to the edge of the roof upon which he was performing his duty. He had no right blindly to assume that there was a continuation of the roof, or another roof beyond the wall. Before he stepped over, he should have ascertained the condition of things; and his failure to do this was a distinct act of neg-

ligence, which was the immediate cause of the accident. The open space was not the proximate cause of the injury. The proximate cause was the plaintiff's failure to discover the opening beyond the coping.

It follows that the plaintiff was guilty of contributory negligence, and the complaint was properly dismissed.

BARTLETT, J., concurs with GOODRICH, P. J., except as to the contributory negligence of plaintiff.

CULLEN, J. (concurring in the result). I dissent from the view that the plaintiff was guilty of contributory negligence in failing to observe the condition of the premises of the defendants, or in stepping over the coping. The question was one of fact for the jury. But I am clear that no negligence can be imputed to the defendants. Certainly, an owner of real property is not bound either to so improve his own property or guard it that a person may not fall thereon from his neighbor's premises. If there is any duty as to the subject-matter, it rests on the neighbor. Secondly, even had the plaintiff fallen from the defendants' roof, the latter would not have been liable. Where one does not, either expressly or by implication, invite persons to use the roof of his building, he is under no obligation to make it safe and secure for those that may enter upon it. The defendants might have constructed the roof of glass, in iron frames, if, for any purpose, great light in the building was desired; and the presence of skylights in city dwellings is very common. In the absence of statutory direction, the defendants were not bound to provide for the use of the roof by firemen. In the exercise of the police power, the legislature may doubtless regulate the character of buildings with reference to the danger from fire. In many portions of every city the erection of wooden buildings is now prohibited. But, until such prohibition is enacted, one may build his house of wood without incurring liability, though doubtless it is more readily burned than brick structures. Even where the erection of wooden buildings is prohibited, I know of no case where the demolition of those already erected has been compelled.

WOODWARD, J., concurs with CULLEN, J.