## THE CATSKILL BANK *vs.* HORACE GRAY and the ULSTER IRON COMPANY.

By an agreement between the Ulster Iron Company and H. Gray, made in September, 1843, the former leased to the latter for the term of five years certain premises at S., on which were mills, machinery and water power for the manufacture of iron. As rent of the premises G. stipulated to pay to the company one-fourth part of the net profits arising from the premises, and the manufacture of iron thereon, after deducting all charges, excepting

commissions on sales at N. Y., the personal services of G. and the general superintendence at S., which were not to be charged in making up profits. G. was to provide all the funds and capital necessary for the manufacture of bar iron; and he was authorized to expend, in putting the works in order, and in additional machinery, a sum not to exceed $5000, for which the company was to allow him interest, until the accruing rent should be equal to the expenditure. Any loss that might occur was to be charged to profit and loss account, but the company was not to be liable to repay any moneys already received by them as rent, or be liable for any loss or deficiency at the end of the demised term. Of the fourth part of the profits which were to be paid as rent, one half was to be paid annually, and the balance at the end of the term, with interest; such interest to be yearly added to the principal. G., in furnishing the capital to carry on the business, was authorized to charge interest on his advances, and was to allow interest on all moneys in his hands, arising from the manufacture. If a particular kind of pig iron was used it was to be charged for at its fair market price; the price, and all other questions under the agreement, to be decided by J. T., who was to make up the yearly accounts of the profits.

*Held,* that this was an agreement for a specific interest by the iron company in the profits of the business to be carried on upon the demised premises, as *profits,* and not as a measure of compensation for the use and occupation of the premises; and that as respected third persons, the parties to such agreement were partners.

Accordingly *held,* that G. and the Ulster Iron Company were liable as for money had and received as partners, upon drafts drawn by the agent or superintendent of the company, after the making of the agreement, for moneys loaned by such agent and applied and used for the purpose of carrying on the business of the copartnership, on the demised premises.

*Held also,* that under its charter, the Ulster Iron Company was capable of making the contract with G.; although the effect of it might be to impose upon the corporation, as respected the public, the liabilities of a partner; such contract relating to the business for which the company was incorporated, and being but a mode of furthering the specific purpose of its creation.

THIS cause was tried at the Greene circuit in April, 1849, before Mr. Justice Parker, a trial by jury having been waived by the consent of parties.

In September, 1843, the Ulster Iron Company leased to one Horace Gray, for the term of five years, their Iron Works at Saugerties, in the county of Ulster. The company covenanted that Gray might expend, in putting the works in order, and in additional machinery, a sum not to exceed $5000, and for the amount so expended, the company was to allow him interest, at

Catskill Bank *v.* Gray.

six per cent from the date of the expenditures until the rent should be equal to the sum, and then the rent should be applied in liquidation thereof. Gray was to pay to the company as rent for the demised premises "one fourth part of the net profits arising from the said demised premises, and the manufacture of iron thereon, after deducting all charges, (excepting commissions on sales at New-York, the personal services of Gray, and the general superintendence at Saugerties, which were not to be charged in making up profits.) One half of the profits were to be paid annually, and the balance at the end of the demised term. On such balance, Gray was to allow and pay interest to the company at the rate of six per cent per annum; which interest was to be added yearly to the principal. The first $5000 of profits which would fall to the share of the company, was to be applied to liquidate the expenditures for repairs. The company was not to be liable to repay any moneys already previously received by them as rent, or be liable for any loss or deficiency at the end of the term demised. It was further agreed that the Stockbridge and Port Henry pig iron might be used in the manufacture of iron on the demised premises, and if so used, should be charged at the fair market price. Gray was to provide all the finances necessary for the manufacture of bar iron on the demised premises; and to furnish all the necessary capital, in cash or otherwise, as should be required for the said manufacture, to the greatest advantage, he charging on his advances interest from the date thereof, at the rate of six per cent per annum, and allowing the same interest on all moneys in his hands arising from such manufacture. Gray, at the end of the term, was to surrender the premises peaceably and quietly, unless in the meantime he should elect to purchase the same at the sum of $100,000. It was also provided that the company might re-enter if the portion of the net profits to be received as rent, should be behind and unpaid for the space of thirty days next after any of the days of payment, or if the manufacture should be stopped by Gray, for the term of six months, without the written consent of the company, unless some severe breakage or causualty should take place. From and after

such re-entry, the covenants on the part of the company were to cease, determine, and be absolutely void.

In the fall of 1847, one William Burt, as superintendent of the Ulster Iron Works, obtained from the Catskill Bank, loans upon three drafts or bills of exchange, drawn by himself as superintendent, on Horace Gray & Co. of Boston, and accepted by them. These drafts were discounted by the bank, and amounted in the whole to $19,500; Burt was at that time acting as the agent or superintendent of the Ulster Iron Works. He stated, in his testimony, that the accounts were kept at the works with Horace Gray as lessee, and he acted as the agent of such lessee. He never received any directions from the Ulster Iron Company, nor any of its officers, nor ever borrowed any money for them. The money received by Burt from the bank was used at the works, in paying off men, and other contingent expenses, such as freight, &c. It was admitted on the trial that the drafts had never been paid, and were duly protested.

The counsel for the company insisted before the judge, that such company was not liable jointly with Horace Gray, as no partnership had been shown to exist between them, and that the officers of the company could not enter into a partnership with Gray which would be binding upon the company; that the transactions between Burt and the plaintiffs were not loans to the Ulster Iron Company, as copartners with Horace Gray & Co., but were purchases or discounts of negotiable paper; that the only remedy of the plaintiffs was directly upon the drafts or bills of exchange, against the parties thereto; and that the fact of the money obtained by Burt on the discount of the drafts having been applied to carrying on the business, conducted with the iron works leased by Horace Gray & Co., did not create any liability of the Ulster Iron Company as copartners with Horace Gray & Co., or otherwise, to pay the drafts so dis counted, or the amount so applied to carrying on the said business.

The counsel for the plaintiffs contended that the defendants were liable to the plaintiffs under the pleadings and proofs, for the amount loaned of the plaintiffs for the purpose of carrying

Catskill Bank *v.* Gray.

on the manufacture of iron at their manufactory in the village of Saugerties.

The judge decided that the plaintiffs were entitled to recover against the defendants for the sums loaned by them to the witness Burt, as superintendent, which were used in and about the business of manufacturing iron in the manufactory at Saugerties, as testified to by him; to which decision the counsel for the company excepted.

The judge further decided that the plaintiffs should recover from the defendants the sum of $21,104,67, to which decision the counsel for the company excepted.

*John Van Vleck,* for the plaintiffs.

*John C. Spencer,* for the Ulster Iron Co.

*By the Court,* WRIGHT, J. The judge who tried the cause decided that the defendants, under the pleadings and evidence, were jointly liable to the plaintiffs for the moneys loaned by the latter, and which were used in and about the business of manufacturing iron at the Ulster Iron Works, in 1847. This is correct, if by the terms of the agreement of September, 1843, Horace Gray and the Ulster Iron Company sustained the relation of partners, as respected third persons, and the money was loaned to the supposed partnership or to the agent of the partnership as such. If they are to be made to respond jointly for the debt due to the bank, it must be on a construction of that agreement; the money having been used at the works during its continuance in the business of manufacturing iron.

It is now well settled that the rule is not universal that a communion of profits creates partnership. A party may stipulate for a compensation proportioned to the profits of a particular trade or business, and not be a partner even as to third persons; but if he stipulates for an *interest* in the profits of the business, as such, which would entitle him to an account as a partner, then he is to be holden liable to third parties as a partner. The compensation of a servant or other employee, for per-

sonal services, may be regulated by the profits of the business. So, also, where land or other property is leased to another, for a particular business, the rent may be stipulated to be paid proportionately to the profits. (*Champion* v. *Bostwick*, 18 *Wend.* 184. *Vanderburgh* v. *Hull*, 20 *Id.* 70. *Burckle* v. *Eckart*, 1 *Denio*, 341. *Heimstreet* v. *Howland*, 5 *Id.* 68. *Chase* v. *Barrett*, 4 *Paige*, 160. *Boyer* v. *Anderson*, 2 *Leigh*, 550. *Perrine* v. *Hankinson*, 6 *Halstead*, 184. 3 *Kent's Com.* 32. *Gow on Part.* 19. *Col. on Part, by Perkins, sec.* 25. *Loomis* v. *Marshall*, 12 *Conn. Rep.* 69.) The reason given for the distinction above stated is this. In a case where the stipulation is for a compensation proportioned to the profits, without having a specific lien upon such profits to the exclusion of other creditors, it is for the interest of the creditors that the party should be compensated in that way, instead of receiving a fixed compensation, whether the business produces profits or otherwise. On the other hand, if the stipulation is for an interest in the profits of the business, which would entitle the party to an account, and give him a specific lien or a preference in payment over other creditors, and the full benefit of the increased profits of the business, without any corresponding risk in case of loss, it would operate unjustly as to other creditors. Hence, it is right in principle, that the party should be holden to be liable to third persons as a partner in the latter case, but not in the first. (*Cary on Part.* 11, *note I. Champion* v. *Bostwick*, 18 *Wend.* 184.)

The agreement of September, 1843, is set forth in the complaint, and not being denied by the answer, is to be taken as true. By that agreement, the Ulster Iron Company leased to Horace Gray, for the term of five years, certain real property in Saugerties, in the county of Ulster, on which were mills, machinery and water power for the manufacture of iron. As rent of the demised premises, Gray stipulated to pay to the company "one fourth part of the net profits arising from the premises, and the manufacture of iron thereon, after deducting all charges, excepting commissions on sales at New-York, the personal services of Gray, and the general superintendence at Saugerties,

which were not to be charged in making up profits." Gray was to provide all the funds necessary for the manufacture of bar iron to the best advantage on the demised premises, and all the necessary capital in cash or otherwise, as should be required for such manufacture. He was authorized to expend in putting the works in order, and in additional machinery, a sum not to exceed $5000, for which sum so expended, the company was to allow him interest, until the accruing rent should be equal to the expenditure. It was further stipulated that any loss that might occur should be charged to the profit and loss account, but the company was not to be liable to repay any moneys already previously received by them as rent, or be liable for any loss or deficiency at the end of the demised term. Of the fourth part of the profits which were to be paid as rent, one-half was to be paid annually, and the balance at the end of the term, with interest; such interest to be yearly added to the principal. Gray, in furnishing the capital to carry on the business, was authorized to charge interest on his advances, at the rate of six per cent per annum, and was to allow interest on all moneys in his hands arising from the manufacture. It was also agreed that the Stockbridge and Port Henry pig iron might be used in the manufacture of iron on the demised premises, and if so used should be charged at its fair market price; the price, and all other questions under the agreement, to be decided by Joseph Tuckerman of the city of New-York, who was to make up the yearly accounts of the profits.

Is this a stipulation for a proportion of the profits as a measure of compensation for the use and occupation of the demised premises, or is it, in contradistinction thereto, an agreement for a specific interest in the profits as profits? I think that it is clearly of the latter character. The provisions of the agreement look to a direct interest, by the company, in the profits to be actually made from the manufacture of bar iron on the premises. The contract between the parties, is, in effect, this. A company, incorporated for the manufacture of iron, having mills, machinery and water power, agree with an individual for the use of the same for five years. The object of the contract

is the manufacture of iron. The funds needed are to be advanced, the labor performed, and the business actually superintended by Gray. Gray is to procure and disburse the money for the purchase of materials, the payment of workmen, and to meet all the expenses incident to the manufacture, to the best advantage to the parties. An account of the net profits is to be annually made up. In making up this account, Gray is to be allowed by the company, interest on his advance of funds, and to pay interest on all moneys in his hands arising from the manufacture. All charges are to be deducted, except commissions on sales at New-York, Gray's personal services, and the general superintendence of the establishment. Should a certain description of pig iron be used, it is to be charged in the account at its fair market price, and in case of disagreement as to the price, it is to be adjusted by the person named to make up the yearly account of profits. The losses that might occur are to be charged in the profit and loss account, although the company are not to be liable to repay any moneys already previously received by them, or be liable for any loss or deficiency at the end of Gray's term. The account of actual profits being annually made up in accordance with the stipulations, the company is to have the one-fourth part thereof.

It is unnecessary to decide whether under this agreement, as between the parties themselves, they would be partners; but as respects third persons, it appears to me that that relation legally exists. What was to be received by the company was only payable out of profits actually made in the manufacture of iron. They had then a direct interest in such profits. As was said in *Dob* v. *Halsey*, (16 *John*. 40,) "he who takes a part of the profits indefinitely, shall by operation of law be made liable for losses; upon the principle, that by taking a part of the profits, he takes from the creditors a part of that fund which is the security for the payment of their debts. (*See also Everett* v. *Coe*, 5 *Denio*, 180; *Hasketh* v. *Blanchard*, 4 *East*, 144.) The case is not like that of *Heimstreet* v. *Howland*, (5 *Denio*, 68,) where one leased a ferry to another, the latter to take charge of the business, pay all the expenses, and pay over to the

lessor one-half of the gross receipts for ferriage; and it is clearly distinguishable from *Boyer* v. *Anderson*, (2 *Leigh*, 550,) and *Perrine* v. *Hankinson*, (6 *Halst.* 181.

It is urged that the Ulster Iron Company, being a corporation, could not legally form a partnership with an individual. This company was incorporated in 1831, for the purpose of manufacturing iron. It might, therefore, lawfully exercise the powers expressly granted to it, and those necessarily to be implied, to enable it to answer the specific purpose of its creation. I entertain no doubt that under its charter, the company was capable of making the contract with Gray set forth in the pleadings. That contract related to the business for which the company was incorporated, and was but a mode of furthering the specific purpose of its creation. Strictly, perhaps, corporations should be, and are restricted from contracting partnerships with individuals or corporations, and as between the parties to the contract, acting upon equal knowledge, a question of validity might be raised; but a corporation may contract with an individual in furtherance of the object of its creation, the effect of which contract may be to impose upon the company as respects the community, the liabilities of a partner. I cannot think that a corporation may so shape its contracts relating to the business for which it was incorporated, as to share jointly with an individual in the profits of such business; subtract its interest in the profits, from the fund on which the creditors of the concern had a right to rely for the payment of the debts due to them; and when called upon by such creditors, be permitted to escape liability altogether, on the ground that the profits were realized as the partner of an individual, which relation the corporation could not legally occupy. I know of no sound reason why a corporation, more than a natural person, who participates in the profits, as such, of a particular business in which it may lawfully engage, should not be holden liable to the public for losses.

It is further insisted by the counsel for the company, that the money was not loaned to the supposed partnership, or to the agent of the partnership as such; that the loans were made to Burt as agent of Horace Gray, on his drafts on H. Gray &

Co.; that the transaction was a discount and purchase of negotiable paper, and the plaintiffs' remedy is confined to the paper; that the fact that the money received by Burt was applied to the business of the partnership, does not entitle the plaintiffs to recover it of the copartners. The money sought to be recovered was loaned to Burt, as superintendent of the Ulster Iron Works, and applied by him to the business being conducted under the agreement of September, 1843. The plaintiffs do not seek to directly charge the defendants as parties to the bills of exchange, but on a joint liability for money had and received. The fact that Burt was superintendent of the iron works when the loan was effected and applied, is found by the judge. He was the superintendent or agent at the works, in carrying out the agreement between Gray and the company. The money was obtained by him as such superintendent and applied for their joint and mutual benefit. The bank certainly knew that Burt was acting as the agent of third persons in procuring the loan. He professed to act for others; and it is not unreasonable to conclude that the plaintiffs, in loaning these funds, had regard to the eventual liability of the principals, whoever they might be, if it should become necessary to resort to them. In *Emly et al.* v. *Lye et al.* (15 *East*, 6,) the action being upon a bill of exchange drawn by one of the partners of a concern, in his own name, which was discounted by the plaintiffs, and the money went to the use of the firm, it was held that the plaintiffs could not recover, either upon the bill or the money counts. Lord Ellenborough observed that the counts on the bill had been properly abandoned, for unquestionably on a bill of exchange drawn by one only, it cannot be allowed to supply by intendment the names of others, in order to charge them; and considering it a mere discount or sale of the bill, he also held that there was no joint liability of the defendants for money had and received, and that it was the individual transaction of the partner who drew the bill; and all the other judges expressed similar opinions. I do not, however, deem this case in all its aspects similar to the one under consideration. The agreement of September, 1843, contemplated that there should be a general superintend-

ent of the business of manufacturing iron, though as between the parties thereto, payment for his services was not to be charged in making up the account of profits.   This superintendent draws the bills that were discounted by the plaintiffs, signing them in the character of superintendent.   He must have acted exclusively as the agent of Gray, in drawing and negotiating the bills. to render the facts of this case similar to those of *Emly* v. *Lye.* The facts must have shown the transaction to have been a mere discount or sale of bills.   But it seems to me necessarily to be implied from the decision of the judge that he found the fact that Burt acted as the agent of the defendants, and not exclusively as the agent of Gray.   Whether that finding is sustained by the evidence, is not a question to be entertained on a bill of exceptions.

New trial denied.

[ALBANY GENERAL TERM, December 1, 1851.  *Parker, Harris* and *Wright,* Justices.]