HENRY BLACKWELL, adm'r &c. of John Maher, deceased, *vs.*
EBENEZER WISWALL.

The only principle upon which one man can be made liable for the wrongful acts
of another is, that such a relation exists between them that the former, whether
he be called principal or master, is bound to control the conduct of the latter,
whether he be agent or servant.

The maxim of the law is *respondeat superior.* It is only applicable in cases
where the party sought to be charged stands in the relation of *superior* to the
person whose wrongful act is the ground of complaint.

Where the defendant, who had obtained from the proper authority an exclusive
right and license to run a skiff ferry across a river, permitted another person,
called a lessee, to exercise the right, not as the defendant's agent or servant or
for his benefit, but on his own account, and, owing to the negligent and un-
skillful conduct of the man rowing and having charge of the skiff, the same
was sunk or swamped, and the plaintiff's intestate was drowned; *it was held,*
that whether the person exercising the right of ferrying under the defendant's
license was the same man who was rowing and had charge of the skiff, or his
employer, the relation of superior and subordinate did not exist between him
and the defendant. And that before the defendant could be made liable for
the negligence or unskillfulness of the person having charge of the boat, it
must appear that the relation of master and servant existed between them.

*Held also,* that although, as between the defendant and the government, he
might have been guilty of a breach of duty when he made the contract to lease
the ferry to another, yet that such breach was not, *per se,* a wrongful act for
which an action would lie, in favor of a stranger. That it would still be neces-
sary to show, in order to maintain an action founded upon the mere fact that
the defendant had thus leased the ferry, that by this very act he had been
guilty of a wrong which had resulted in injury to the plaintiff.

DEMURRER to complaint. The plaintiff stated that in May,
1852, the defendant was duly licensed to run a skiff ferry,
for ferriage, from the city of Troy to West Troy, across the
Hudson river, for the period of three years, and that, up to the
13th of October, 1854, he continued to hold said license, and to
run said skiff ferry, *by his lessee, and by persons acting and
ferrying under said license,* and that, *being such ferryman,*
John Maher was taken, as a passenger for ferriage, on board a
skiff *run at defendant's said ferry pursuant to said license,*
and that, owing to the overloading of the skiff, the improper
stowing of passengers, and the negligent and unskillful conduct
of the man rowing and having charge of the skiff, the same was

sunk or swamped, and Maher was drowned, and that the plain-tiff had been duly appointed administrator of his estate.

To this complaint the defendant demurred, specifying for cause, that it did not contain facts sufficient to constitute a cause of action.

*D. Gardner*, for the plaintiff.

*D. L. Seymour* and *G. Van Santvoord*, for the defendant.

HARRIS, J.   The allegation in the complaint is, that Maher was drowned through the negligence and unskillfulness of " *the man* rowing and having charge of the skiff." *Whose man* he was, does not appear.   If it had been alleged that he was the agent or servant of the defendant, it would have been sufficient to sustain the complaint, upon demurrer. ·  It is alleged that the skiff was run at the defendant's ferry, and pursuant to the defendant's license.   But this allegation is not sufficient to warrant the inference that " the man rowing and having charge of the skiff " was in the defendant's employ.   On the contrary, when considered in connection with the further allegation in the complaint, that the defendant continued to hold the license and to run the ferry *by his* lessee, the inference may, perhaps, be justified, that the defendant had authorized some other person to run the ferry, and that " the man " rowing and having charge of the skiff was the servant of the defendant's lessee.   It was assumed upon the argument, by the counsel for both parties, that this was the construction to be put upon the language of the complaint, and that the question involved in this issue is, whether the defendant is liable for the wrongful act of his lessee.

The only principle upon which one man can be made liable for the wrongful acts of another is, that such a relation exists between them, that the former, whether he be called principal or master, is bound to control the conduct of the latter, whether he be agent or servant.   The maxim of the law is *respondeat superior*.   It is only applicable in cases where the party sought to be charged stands in the relation of *superior* to the person

whose wrongful act is the ground of complaint.   In this case, it is not pretended that the man, whose alleged negligence and unskillfulness resulted in the death of the plaintiff's intestate, was the agent or servant of the defendant, or in any way subject to his direction or control.   The defendant had obtained from the proper authority an exclusive right to run the ferry.   This right he permitted another person, who is called a lessee, to exercise, not as his agent or servant, or for his benefit, but on his own account.   Whether the person exercising this right of ferrying under the defendant's license was the same man who was rowing and had charge of the skiff, or his employer, does not appear, but in neither case could the relation of superior and subordinate exist between him and the defendant.   (*See Stevens* v. *Armstrong*, 2 *Selden*, 435 ; *City of Buffalo* v. *Holloway*, 3 *id.* 493 ; *Pack* v. *The Mayor &c. of New York*, 4 *id.* 222.)

Upon this question, the case of *Felton* v. *Deall*, (22 *Verm. R.* 170,) is directly in point.   The legislature of this state had granted to Deall the right, for a specified time, to maintain and use a ferry across Lake Champlain from Ticonderoga to Shoreham.   Having established the ferry, Mrs. Deall, the licensee, entered into a contract with one Hobbie, by which he was to keep and manage the ferry, at his own expense of labor, for one year.   The expenses of repairs were to be equally borne by the parties, and the receipts of the ferry were to be equally divided between them.   Hobbie further agreed, that he would not allow any but a faithful, honest, obliging and temperate man to attend the ferry, and that he would be responsible for damages occasioned by willful misconduct or neglect in its management. While Hobbie had charge of the ferry under this contract, Felton, the plaintiff, went upon the ferry boat with his horse and wagon, for the purpose of crossing over from Ticonderoga to Shoreham:   The boat was upset, and the plaintiff and his property injured.   To recover damages for this injury, the action was brought against Mrs. Deall.   It was held, that the contract being such as to vest the occupancy and control of the ferry in Hobbie, as the tenant rather than the servant of the defendant, she was not responsible for his acts.

Blackwell *v.* Wiswall.

It is supposed that there is something in the fact that the license to run the ferry was granted to the defendant which affects the question of his liability. But I think not. I agree with the plaintiff's counsel that the license was, in its nature, a personal trust. The court is only authorized to grant licenses to such persons as they deem suitable. It has been held that such a license is not assignable. (*Harding* v. *The Steam Boat Maverick*, 5 *Law Reporter*, 106.) But yet, I am unable to see how this concession can be made to aid the plaintiff in sustaining his action.

The defendant, before receiving his license, was required to enter into a recognizance to the people, with a condition that he would faithfully keep and attend the ferry, with such and so many sufficient and safe boats, and so many men to work the same, as should be deemed necessary, &c. It is further declared, that a violation of the condition of the recognizance shall be deemed a misdemeanor, and that, upon conviction, the person guilty of such violation shall be subject to a fine, for each offense, not exceeding $25, and further, that on proof of such conviction, the court shall direct the recognizance to be estreated for the use of the people of this state. (1 *R. S.* 526, §§ 1, 4.) If the defendant had, in any respect, failed to comply with the conditions of his recognizance, he might have been proceeded against in the manner prescribed by statute. So, also, it is provided that in case any person, except in certain specified counties, shall use any ferry for transporting across any river, stream or lake, any person &c., for profit or hire, unless authorized in the manner prescribed, such person shall be guilty of a misdemeanor, and, on conviction, shall be subject to fine, &c. (1 *R. S.* 527, § 8.) If, therefore, the license granted to the defendant did not authorize him to transfer the right to use the ferry to an assignee or lessee, I do not see why the person who should assume to run the ferry under such an assignment or lease, might not be liable to the penalties incurred by any person who may use a ferry without legal authority. But though this be so, the fact that both the defendant and his lessee may have exposed themselves to statutory penalties, does not affect the defendant's liability in

this action. It is still true, in this case as in every other, that before the defendant can be made liable for the negligence or unskillfulness of the man who was rowing and had charge of the boat, it must appear that the relation of master and servant existed between them. Upon the allegations in the complaint this cannot be pretended.

A case very similar to this is found in *Ladd* v. *Chotard*, (1 *Alab. Rep.* 366.) In that case, the defendant was the licensee of a ferry at the falls of Cahawba. He had given the bond required by law. The action was brought to recover the value of a wagon and horses which had been lost in crossing the ferry. It was proved on the part of the defendant, that at the time of the loss, the ferry was in possession of one Blake, to whom it had been rented by the defendant, and who was entitled to the ferriage. By a statute of Alabama it was declared, as in this state, that no person should open or establish a public ferry without license, and a bond and security as prescribed. Yet it was held that the action would not lie against the lessor of the ferry, for the reason that the tenant of the ferry was not his servant.

The case of *Blake* v. *Ferris*, (1 *Selden*, 49,) is also quite analogous to this. There, Ferris had obtained permission from the municipal authorities of New York to open one of the streets for the purpose of constructing a sewer. His license, which was in writing, contained an express provision that he should cause proper guards and lights to be placed at the excavation of the drain, for the prevention of accidents, and be answerable for any damages or injuries which might be occasioned to persons, animals or property, in any manner connected with the construction of the sewer. Ferris having obtained this license, contracted with one Gibbons to furnish all the materials and build the sewer, for a stipulated price. While Gibbons was engaged at the work, a carriage and horses belonging to Blake were driven into the open excavation, and injured. To recover damages for this injury, the action was brought against Ferris. The superior court allowed a recovery, but the judgment was reversed by the court of appeals. The unanimous judgment of the court was

pronounced by Mr. Justice Mullett.  The case was extremely well considered, and the opinion exhibits great clearness and strength of argument.  The judge assumed, for the purpose of considering the question, that Ferris had, by means of his license, a lawful right to construct the sewer himself, or by his agents or servants, and that he would be responsible to third persons for all injuries occasioned by the negligent or improper manner in which he exercised that right.  He further assumed, that Ferris had the right to let, by contract, the execution of the work to another person, who, as to the right to make the sewer, might be regarded as representing Ferris and be protected under his license, and also that Ferris would be liable to third persons for injuries resulting from an improper exercise of the right of letting the work by contract.  But it was held, that the action could not be sustained, unless the fact could be established that Ferris occupied the position of *superior* of the persons whose negligence or misconduct was the occasion of the injury, and had the powers of one in that position; and, upon this point, that the contract with Gibbons did not constitute him the agent or servant of Ferris, nor authorize him to pledge the responsibility of Ferris for the conduct of his servants, or any thing else that might be done in the execution of the contract.

This decision, it seems to me, completely disposes of the question in this case.  The defendant, like Ferris, had been entrusted with authority to do certain things which others might not do, and which, to some extent, involved public interests.  The defendant, like Ferris, instead of doing what ·he had permission to do himself, or by his agents or servants, entered into a contract with another person to do it, at his own expense and with his own servants.  If, in *Blake* v. *Ferris*, the contract with Gibbons did not create the relation of *superior* and *subordinate* between Ferris and Gibbons, in respect to those acts which belonged to the practical execution of the work, or the employment of men to execute it, I am unable to see how it can be maintained that such relation existed between the defendant and the person authorized by him to run his ferry at his own expense

and for his own advantage.  (*See also, upon this point, Heim-street* v. *Howland*, 5 *Denio*, 68.)

Nor have I been able to perceive how the plaintiff's case could be helped by establishing the fact that the defendant, in letting his ferry to another person, was chargeable with a breach of duty.   This action is for a *wrong*.   It can only be maintained when the death for which the plaintiff sues has been caused "by wrongful act, neglect or default."   Let it be conceded that, as between the defendant and the government, he was guilty of a breach of duty when he made the contract to lease the ferry. Such breach was not, *per se*, a wrongful act for which an action would lie in favor of a stranger.   It would still be necessary to show, in order to maintain an action founded upon the mere fact that the defendant had thus leased the ferry, that by this very act he had been guilty of a wrong which had resulted in injury to the plaintiff.   It was upon this principle, that the case of *Thomas* v. *Winchester*, (2 *Selden*, 397,) was decided.   Winchester had carelessly placed upon a poisonous medicine the name of a harmless article.   It had been sold by him, and after passing through several hands, was administered to the plaintiff's wife and resulted in serious injury.   It was held that, without regard to any contract, Winchester was liable for the injury, upon the ground that in putting a false label upon a poisonous article of medicine, he was guilty of a wrongful act which caused the injury for which the action was brought.

It cannot be pretended that, in this case, the fact that the defendant allowed another person to exercise his right of ferrying was the cause of the death of Maher.   It is the negligence or unskillfulness of the lessee of the ferry, or his servant, of which the plaintiff complains.   He undertook for hire to carry Maher across the river.   He failed to discharge the duty which this contract imposed upon him.   His negligence or unskillfulness in the performance of what he had contracted to do in a prudent and skillful manner, was the cause of the death in question.   For this, as we have seen, the defendant is not answerable. He is, therefore, entitled to judgment upon the demurrer, but with liberty to the plaintiff to amend his complaint within

Vol. XXIV          46

twenty days after service of notice of this decision, upon the payment of the costs of the demurrer, to be taxed by the clerk of Rensselaer.

— [RENSSELAER SPECIAL TERM, June 11, 1855. *Harris,* Justice.]

NOTE. This cause was heard upon an appeal from the above decision, at the Albany general term, in March, 1857, and affirmed upon the argument.