LUSK v. PECK et al.

(Supreme Court, Appellate Division, Fourth Department.  May 5, 1909.)

1. LANDLORD AND TENANT (§ 162*)—CONDITION OF PREMISES—LIABILITY OF LANDLORD.

As a general rule, the owner of leased premises is not liable to the lessee or any other person for the condition of the premises, nor is there an implied warranty that the premises may be used for the purpose designed.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 629; Dec. Dig. § 162.*]

2. LANDLORD AND TENANT (§ 170*)—CONDITION OF PREMISES—LIABILITY OF LANDLORD.

Where the premises when leased were in a defective condition, constituting a nuisance, the liability of the landlord for the results of the nuisance continues, though the lessee may also be liable.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 685; Dec. Dig. § 170.*]

3. THEATERS AND SHOWS (§ 6*)—LIABILITY FOR INJURIES—PERSONS ATTENDING.

The owner of a place of public entertainment is charged with the positive obligation to know that the premises are safe for such use, and he is not exonerated merely because he had no exact knowledge of the defective condition of the place to which he had invited the public.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 6; Dec. Dig. § 6.*]

4. LANDLORD AND TENANT (§ 169*)—CONDITION OF PREMISES—INJURY TO THIRD PERSON—QUESTION FOR JURY.

As to what constitutes negligence by the landlord in leasing and permitting to be used a place for amusement which was, because of decay, in a dangerous condition, is for the jury to determine.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 646, 667, 684; Dec. Dig. § 169.*]

5. LANDLORD AND TENANT (§ 165*)—CONDITION OF PREMISES—LIABILITY TO LICENSEE OF TENANT.

The owner of bleachers to be used by persons in witnessing games, who leased the same, knowing or having the means of knowing of their dangerous condition from decay, is liable to a person who was injured by a collapse of the bleachers during a game.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–641; Dec. Dig. § 165.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. LANDLORD AND TENANT (§ 165*)—DANGEROUS PREMISES—INJURY TO LICENSEE OF TENANT.

The liability of a landlord for injuries to a licensee of the tenant from a defective condition of the premises is not affected by a provision in the lease requiring the lessee to make repairs, where the defect existed when the lease was renewed.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–641; Dec. Dig. § 165.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by James L. Lusk against Arthur R. Peck and another. From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendant Peck appeals. Affirmed.

The plaintiff was injured October 20, 1906, by the collapse of bleachers on which he was sitting, with others, witnessing a game of football between the college teams of Syracuse and Colgate Universities in Athletic Park, in the city of Syracuse. The appellant Peck and the Arthur Realty Company were the owners of the grounds composing the park or field, comprising about eight acres of land. Both owners were named as defendants, although service of the summons was made only on the appellant, and he alone defended. The complaint alleges facts imputing negligence to the defendant, which, it is claimed, caused the accident; and also charges the owners with maintaining a nuisance which resulted in the injuries to the plaintiff.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles P. Ryan, for appellant.
Theodore E. Hancock and Stewart Hancock, for respondent.

SPRING, J. The grandstand and bleachers in Athletic Park were constructed by the Lakeside Railroad Company in 1900, and were intended for public entertainments. The bleachers were made of hemlock timber, and were about 154 feet in length, in sections of 14 feet each, and of the width of about 40 feet. The seats commenced at the ground, extending upwards to the rear, and the rear posts were 16 feet in height. A more minute description of the structure is unnecessary. The plaintiff paid the entrance fee to the park, and an additional fee for a seat on the bleachers. He was on the twelfth row from the ground, when about one-half of the upper part of the structure collapsed, including the row on which he was sitting, and he was precipitated to the ground, sustaining serious injuries. The bleachers were well filled, and the people were at times demonstrative, applauding and stamping with their feet whenever a skillful play was made, or an advantage gained or lost. After the bleachers had fallen, it appeared that the uprights or supporting posts were badly decayed, and that the whole structure was unsafe to be occupied by the large number of people permitted to use it.

The park was purchased by the appellant and the realty company in June, 1904, and was not used to any great extent that season. On the 10th of March, 1905, the owners leased the premises to Kuntzsch & Griffin for one year at the rental of $500, and a new lease for an-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

other year was made in March, 1906, at a rental of $700, and with an increase of $100 in the event of the payment of a certain sum by the Syracuse University team. Each lease contained a covenant on the part of the lessees to make all repairs "to the buildings, grounds and fences at their own expense." Upon the trial the plaintiff claimed that the bleachers were inherently defective by reason of faulty construction originally. Considerable evidence was given by each of the parties bearing upon this issue. In view of this evidence, the court submitted this specific question to the jury:

"Was the structure which fell causing the plaintiff's injuries of sufficient strength at the time it was erected to safely support the number of people it was designed to seat?"

To this the jury answered "Yes." By this answer any question of the original defective construction of the bleachers was eliminated and the issue considerably narrowed. The plaintiff gave proof tending to show that when the lease was made by the appellant to Kuntzsch & Griffin in March, 1905, and also in 1906, the structure had badly deteriorated, and had become unsafe and inadequate for the purpose intended. The bleachers were uncovered. They were located on wet marshy ground. There were no caps or coverings on the tops of the uprights or supports where the girders joined to prevent the rain from soaking into these posts. They were thus exposed to the inclemencies of the weather in a changeable climate. Builders and architects testified that sound well-seasoned hemlock uncovered, as this structure was, would become impaired and its sustaining strength materially lessened within from two to four years after it was put in place. They examined the broken rotten timbers, and testified that the deterioration extended back for more than two years prior to the accident. They also testified that the decayed condition could have been readily ascertained by striking the timbers with a hammer or even with the hand, and that an inspection of the surface of these timbers would have disclosed their defective condition. The court in his charge to the jury very carefully explained the effect of the imperfect original building of the structure as pertaining to the liability of the defendant. He then explained the repair clause in each lease, and, adverting to the question of the condition when the property was leased in case the original construction was proper, he said:

"Now, if it had already rotted so that it was apparent then the question is, was it Mr. Peck's duty as the owner of the property and granting such a lease to look over those bleachers for the purpose of discovering whether there was a rotten timber there or not, and, if he found one, to replace it with a good timber, or to notify the lessees of the existence of the rotten timber so that they could replace it? Now there comes, gentlemen, a question of what an ordinarily prudent and cautious man ought to do under those circumstances. Are you able to say from this evidence whether a rotten condition needing repairs existed at that time? * * * If you find that the structure was sufficient in the first place, and that there had been no decay, the decay hadn't progressed to such an extent as to make the structure unsafe for use at the time the lease was made to Kuntzsch & Griffin which was in force at the time of this accident—that is, the lease which was made in the spring of 1906—then I charge you that there can be no recovery by the plaintiff in this case. If the fall of the bleachers was due to some decay of particular timber occurring after these tenants took possession under their last

lease, then I charge you that it was not the fault of Mr. Peck, but was the fault of the tenants, whose duty it was to, replace, to repair or replace, any timbers which became defective during the term which they occupied under their lease. But if you are able to find from this evidence that by reason of decay the timbers, or some of them, were so defective at the time that the lease was made that it was unsafe to lease the grounds for public admission, public use, then you have to consider whether Mr. Peck was negligent in failing to discover that condition of the timbers, in failing to notify the tenant or make some provision for having the timber replaced before surrendering possession under the last lease to the tenants."

We therefore start with the fact established that the structure was adequate when originally put up. We also are justified in assuming the jury found that at the time the appellant parted with the possession of the property the bleachers had become so weakened that they were unsafe, and that any reasonable inspection or test would have revealed this defective condition. The rule is a general one that, where the owner leases property, he is not liable to the lessee or to any one else for its condition, nor does he impliedly warrant that it may be used for the purpose apparently designed. Jaffe v. Harteau, 56 N. Y. 398, 15 Am. Rep. 438; Steefel v. Rothschild, 179 N. Y. 273, 279, 72 N. E. 112; Barrett v. Lake Ontario Beach Imp. Co., 174 N. Y. 310, 314, 66 N. E. 968, 61 L. R. A. 829. This rule is not an unvarying one. If the premises when leased were in a defective condition constituting a nuisance, the liability of the lessor for the results of the nuisance continues, even though the lessee may be liable. Swords v. Edgar et al., 59 N. Y. 28, 17 Am. Rep. 295; Barrett v. L. O. Imp. Co., 174 N. Y. 310, 66 N. E. 968, supra. The exception adverted to is especially applicable to the facts in this case. The Athletic Field was intended for games of football and baseball. The territory inclosed by a high fence included eight acres. The bleachers and grandstand were intended to accommodate a large crowd of people. Fourteen hundred bleacher tickets were sold on the day of the accident. The appellant was aware of the purpose for which the bleachers were expected to be used. In the second lease he was to receive an additional $100 for the use of the property "if the Syracuse University Football Team pay three hundred dollars ($300.00) for the use of 'Athletic Field,' for such games as they wish to play after the baseball season of 1906 closes." An important factor in fixing the liability upon a lessor is that the premises are intended to be used by the public. Barrett v. Lake Ontario Beach Improvement Co., supra; Fox v. Buffalo Park, 21 App. Div. 321, 47 N. Y. Supp. 788, affirmed 163 N. Y. 559, 57 N. E. 1109. The owner of a place of entertainment is charged with an affirmative positive obligation to know that the premises are safe for the public use. He may not be exonerated merely because he had no precise knowledge of the defective condition of the place to which he has invited the public. When they accept his invitation and pay the prescribed admission fee, they have a right to assume he has furnished a safe place for them to witness the performance. If he leases the premises knowing the public use is to continue, he must at least be reasonably assured that they have not deteriorated, that they are still safe for occupancy by the public. This obligation requires affirmative action on his part; and, in order that he may be exculpated to one injured

by reason of the decay of the place he vouched for, it must appear that he inspected the property or in some other adequate manner fulfilled his obligation to the public before leasing the same. Any other rule might relieve a responsible owner from the duty he owes to the public, and shift the burden to an irresponsible tenant. What constitutes negligence on his part, or a proper inspection, or whether a reasonable examination would have disclosed the condition, is for the jury to determine.

If the impairment occurs during the tenancy, another principle intervenes. In this case the jury have found the defective condition existed at the time of the leasing, and that a reasonable examination would have discovered it. It is not important that the lessors did not build the structure. The original building was adequate, and there is very little proof that a nuisance existed when the appellant acquired title to the property. It does appear that, when the owners leased the same, certainly in March, 1906, the bleachers were a menace to the public, a nuisance. In commenting upon this proposition of the liability of one who does not create the nuisance, but permits its existence, the court in Timlin v. Standard Oil Company, 126 N. Y. 525, 27 N. E. 788, 22 Am. St. Rep. 845, says:

"I think that, even if he do not create it, yet if, to his knowledge, it exist on his premises at the time of the demise, and is of a character dangerous to the public or an adjoining owner, or if he were in truth ignorant, and yet by the exercise of reasonable care and diligence he would have known of its existence, there is no principle which can exempt him from responsibility any more than if he create the nuisance himself."

To the same effect is Ahern v. Steele et al., 115 N. Y. 203, 22 N. E. 193, 5 L. R. A. 449, 12 Am. St. Rep. 778. The case was submitted on this proposition as one of negligence. I think this was entirely proper. See dissenting opinion in Barrett v. L. O. B. Imp. Co., 68 App. Div. 601, 74 N. Y. Supp. 301; s. c., 174 N. Y. 310, 66 N. E. 968, supra; and other cases cited. The defective condition may have amounted to a private nuisance, yet defendant's liability may rest upon his omission to ascertain and remedy the defects. The court charged the jury, in effect, that if the defective condition existed when the last lease was made in March, 1906, and not earlier, that the same rule applied as when the first lease was executed. There was no error in this statement. Matthews v. De Groff, 13 App. Div. 356, 43 N. Y. Supp. 237. The lessors owned the property in March, 1906, and made a new lease at an increased rental. They had a right to enter the premises and make any examination desired. Had the lease been made to another party, the liability, if it existed in 1905 in the same circumstances, would exist a year later. The plaintiff, a third party, one of the public, is the person injured and the appellant is not relieved as to him because his second contract happened to be made with the same parties as the previous one.

The judgment should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except McLENNAN, P. J., who dissents in memorandum.

McLENNAN, P. J. (dissenting). Under the charge of the court and the special finding of the jury, the question of nuisance was elimi-

nated, and it was also settled that the "bleachers," so called, were originally properly constructed. There is no evidence tending to show that the defendant, when he leased the premises in question, knew or had any reason to believe that they were not suitable and safe for the purposes for which they were leased. Besides, the lessees covenanted and agreed to make all repairs to the buildings (which included the bleachers), grounds, and fences at their own expense. There is no suggestion in the evidence that the lease so made was not made in good faith and for the purpose of investing the lessee with the absolute possession of the same, and the rights and emoluments resulting therefrom. It also appears that the defendant was in no manner interested in the use to which the lessee should devote the premises. Under these circumstances, it seems to me that the decision in the case of Edwards v. New York Central & Hudson River Railroad Company, 98 N. Y. 245, 50 Am. Rep. 659, precludes a recovery by the plaintiff in this action.

I therefore vote for a reversal of the judgment and order appealed from, and for a new trial to the plaintiff, with costs to appellant to abide event.