(77 Misc. Rep. 147.)

DE NEGRO v. CHRISTMAN.

(Supreme Court, Appellate Term.   June 14, 1912.)

1. LANDLORD AND TENANT (§ 164*)—DEFECTS IN PREMISES—LIABILITY OF LANDLORD.

In the absence of fraud or any agreement, the landlord is not liable to tenants, or others upon the premises, for their condition; and so a landlord is not liable to a tenant, who by reason of a sloping roof, on which she hung clothes, slipped and fell, because of the absence of a railing on its outer edge.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–637, 639, 641; Dec. Dig. § 164.*]

2. LANDLORD AND TENANT (§ 164*)—DEFECTIVE PREMISES—NUISANCE.

A roof, used for the purpose of hanging out clothes, with a slope of less than eight-tenths of an inch to a foot, is not so inherently dangerous as to be a nuisance, to be guarded by a fence or railing, and to render the lessor liable when not so guarded.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–637, 639, 641; Dec. Dig. § 164.*]

3. LANDLORD AND TENANT (§ 164*)—DEFECTIVE PREMISES—LANDLORD'S LIABILITY.

Where a sloping roof was used by all of the tenants as a place to hang out clothes, the landlord is not liable, on the theory that it was a portion reserved for the common use of the tenants, for an injury occasioned because of the absence of a railing on the outer edge; the defect not being caused by failure to keep the roof in repair.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–637, 639, 641; Dec. Dig. § 164.*]

4. LANDLORD AND TENANT (§ 164*)—INVITEES.

Where a landlord allowed his tenants to hang out clothes on a sloping roof, a tenant who fell from the roof cannot recover from the landlord, on the theory that she was on the roof by his invitation; an invitee taking the premises as he finds them.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–637, 639, 641; Dec. Dig. § 164.*]

5. LANDLORD AND TENANT (§ 164*)—DEFECTIVE PREMISES—AGREEMENTS.

Where a landlord agreed to place a railing on the outer edge of a sloping roof which was used by his tenants as a place to hang out clothes, a tenant cannot, after the lapse of several months, recover for injuries occasioned by falling off the roof; the tenant not being at liberty, if the landlord failed to keep his agreement, to permit the premises to remain in an unsafe condition and use them with the liability of injury.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–637, 639, 641; Dec. Dig. § 164.*]

Appeal from City Court of New York, Trial Term.

Action by Amina De Negro against Charles A. Christman.   From a judgment for plaintiff, defendant appeals.   Reversed, and complaint dismissed.

Argued May term, 1912, before SEABURY, LEHMAN, and PAGE, JJ.

Amos H. Stephens, of New York City (Joseph F. Murray, of New York City, of counsel), for appellant.

Morris & Samuel Meyers, of New York City (Nathaniel Choloney, of New York City, of counsel), for respondent.

---

PAGE, J.  The plaintiff was a tenant of the first floor above the store in premises owned by the defendant.  On each of the floors there was a line operated by pulleys extending from near the rear windows to the wall of a rear building.  These lines were used by the respective tenants for the purpose of hanging out their wash.  On the store floor there was an extension 19 feet wide and 21 feet deep, the roof of which is about 3 or 4 inches below the sill of the windows in the rear of plaintiff's premises, and slopes down 16 inches to the outer edge of the roof.  Plaintiff used this roof for the purpose of hanging out her clothes on the pulley line above mentioned.  She testifies that while she was thus engaged, and standing within a foot or two of the window, the line which she attempted to pull broke, and she fell, rolled to the edge of the roof, and dropped to the yard below, sustaining severe bodily injuries.

The plaintiff had resided in these premises for a year and a half prior to the purchase of the building by the defendant, and had used the roof for the aforesaid purpose during that time.  She testified that the former landlord had promised to build a fence upon this roof, and when the new landlord (the defendant) called upon her she told him of this promise that the former owner had made, and said, "Now, the old landlord sold the house, and he did not do anything, and for that reason I am not satisfied," to which defendant replied, "Being that he promised to build you a fence, I will build it for you, and I think you will be satisfied, and you will remain in the house, and we will remain good friends."  This conversation is denied by the defendant; but the jury, having found for the plaintiff, have found that such conversation did take place.

The action was brought to recover damages for the personal injuries thus sustained by reason of the alleged negligence of the defendant.  The case was submitted to the jury on the theory that, the landlord having allowed the plaintiff to use the roof of the extension, he was bound to make it a safe place; and if the condition was obviously dangerous, he was bound to take notice of the fact, and remedy whatever defects might exist.  If it were not obvious, and his attention was called to it, then it was his duty to take such steps as were necessary, within a reasonable time, to overcome the dangerous conditions and prevent an accident.

[1] Had the relation of the parties been that of master and servant, instead of landlord and tenant, the charge would have been more nearly a correct statement of the law.  The lessor of buildings, in the absence of fraud, or any agreement to that effect, is not liable to tenants, or others lawfully upon the premises by his authority, for their condition, or that they are tenantable, and may be safely and conveniently used for the purposes for which they were apparently intended.  Jaffe v. Harteau, 56 N. Y. 398, 401, 15 Am. Rep. 438.  "The tenant hires at his peril, and a rule similar to that of caveat emptor applies, and throws on the lessee the responsibility of examining as to the existence of defects in the premises and of providing against their ill effects."  Franklin v. Brown, 118 N. Y. 110, 112, 115, 23 N. E. 126, 127 (6 L. R. A. 770, 16 Am. St. Rep. 744).

The alleged defect in the case at bar was the lack of a railing on the outer edge of the roof. If this was a defect, it was open and obvious, and known to the tenant. Therefore, if this roof, as a place for hanging clothes, was an appurtenance to the demised premises, no duty rested upon the landlord to alter its construction.

[2] Nor does this case come within the exception to the rule above stated; i. e., where the premises that are rented are in such a dangerous condition as to constitute a nuisance at the time of renting, the lessor remains liable for the consequences of the nuisance. Lusk v. Peck, 132 App. Div. 426, 116 N. Y. Supp. 1051, affirmed 199 N. Y. 546, 93 N. E. 377; Barrett v. L. O. Beach Imp. Co., 174 N. Y. 310, 314, 66 N. E. 968, 61 L. R. A. 829. It cannot be said that the roof of an extension with a slope less than eight-tenths of an inch to a foot is so inherently dangerous as to be a nuisance, to be guarded by a fence or railing.

[3] Nor is this a case where a portion of the premises was reserved by the landlord for the common use of all the tenants. An exceptional use, as a portion of the fire escape, was contemplated. It was not designed for the common use of the tenants as a place to hang clothes. The alleged defect was not caused by a failure to keep the roof in repair, by reason of which it had become unsafe, and, therefore, had it been a place reserved for the use of all the tenants, the landlord's liability could not be predicated upon his failure to keep the place in a safe condition, which was violated by a failure to repair, which distinguishes this case from those relied upon by respondent. Alperin v. Earle, 55 Hun, 211, 8 N. Y. Supp. 51; Rouillon v. Wilson, 29 App. Div. 307, 51 N. Y. Supp. 430; Decker v. Osterweil, 144 App. Div. 653, 129 N. Y. Supp. 681.

[4] Nor was the defendant liable on the theory that the plaintiff was on his roof by his invitation. The lack of a railing was known to the plaintiff, and the person who invites another is bound to guard the one invited from dangers known to him, but not to the one invited, but not to reconstruct or alter his premises to obviate known and obvious dangers. Even if she were on the premises by invitation, she could not deliberately place herself in a position of danger known to her and recover for injuries sustained. This was not an unknown pitfall upon the premises. That there was no rail or fence upon the roof was open, obvious, and well known to the plaintiff.

If the facts of this case came within the theory of negligence, then the jurymen were improperly instructed on the question of contributory negligence. There was no application of the rule of law laid down to the facts of this case, so that the jury could intelligently apply it. This was shown when the jury returned for further instructions, and in substance requested to be instructed as to whether the use of the roof by plaintiff, with knowledge that the railing had not been constructed, did not constitute contributory negligence. The reply was merely a reiteration of the main charge that the plaintiff was required to use that care that a reasonably prudent person would under the circumstances. The judgment would have to be reversed

upon the exceptions. The case, however, was brought and tried upon the wrong theory.

[5] The effect of the defendant's failure to keep his promise to put a fence upon the roof remains to be considered. The promise was alleged to have been made in January. The accident happened in September. The most that can be claimed for this promise is that the landlord had agreed to put a certain improvement upon the premises to obviate a dangerous condition, and for a breach of that agreement he was liable on the contract, and not in tort. The tenant was not at liberty, if the landlord failed to keep his agreement, to permit the premises to remain in an unsafe condition, and to stay there at the risk of receiving injuries on account of the defects in the premises, and then recover as for negligence for any injury she might suffer. The measure of damage for the breach of the contract is the expense for doing the work which the landlord agreed to do, but did not do. "A contract to repair does not contemplate, as damages for the failure to keep it, that any liability for personal injuries shall grow out of the defective condition of the premises." McAdam, Landlord and Tenant (4th Ed.) pp. 1610, 1611. If this be true of a contract to repair, how much stronger would be the rule applicable to a contract to add an improvement.

Therefore the judgment should be reversed, with costs, and the complaint dismissed, with costs. All concur.